United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIKASH MOHAN MOHANTY, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIGBAND NETWORKS, INC., AMIR BASSAN-ESKENAZI, RAN OZ, FREDERICK BALL, GAL ISRAELY, DEAN GILBERT, KEN GOLDMAN, LLOYD CARNEY, BRUCE SACHS, ROBERT SACHS, GEOFFREY YANG, MORGAN STANLEY & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., JEFFERIES & CO., INC., COWEN AND CO., INC., AND THINKEQUITY PARTNERS, LLC<br><br>Defendants. | No. C 07-5101 SBA<br><br>**ORDER**<br><br>[Docket Nos. 12, 15, 43] |

Before the Court are dueling motions seeking appointment as lead plaintiff and approval of lead counsel filed by: 1) Gwyn Jones, a British citizen and resident of the Republic of Cyprus [Docket No. 12]; and 2) Sphera Fund, an Israeli institutional investor [Docket No. 15]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. For the reasons articulated below, Jones's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel is GRANTED. Sphera Fund's motion is DENIED.

# BACKGROUND

**A.     Factual Background[1]**

This is a class action on behalf of purchasers of the common stock of BigBand Networks, Inc. ("BigBand" ), who purchased or otherwise acquired BigBand's common stock pursuant or traceable to BigBand's March 14, 2007 Initial Public Offering ("IPO") and seeking to pursue remedies under the Securities Act of 1933. BigBand develops, markets, and sells network-based platforms that enable cable operators and telephone companies to offer video, voice and data services across coaxial, fiber and copper networks.

The complaint alleges that the Registration Statement and Prospectus filed with the Securities and Exchange Commissions in connection with BigBand's IPO failed to disclose that: (1) BigBand's switched digital video ("SDV") products suffered from interoperability issues with regard to certain video infrastructure systems; (2) the integration of BigBand's SDV products required significant software customization and integration; (3) as such, growth of BigBand's SDV products and sales was stagnant; (4) as a result of the above, BigBand would be forced to recognize the revenue associated with its SDV product sales over an extended period of time; (5) BigBand had shipped excess amounts of inventory to customers such as Verizon, which reduced future demand for these products; and (6) BigBand lacked adequate internal and financial controls.

On August 2, 2007, BigBand reported disappointing second quarter financial results, and announced lowered guidance for third-quarter and year-end 2007, causing shares of BigBand's stock to fall 27.75 percent, on unusually heavy trading volume. Then, on September 27, 2007, BigBand revised its revenue outlook for third quarter 2007 well below its previous guidance for the quarter. Additionally, BigBand disclosed it had experienced a slowdown in revenues as its major customer worked through existing inventory, and that BigBand expected to report an operating loss for third-quarter fiscal 2007. On this news, shares of BigBand's stock declined almost 30 percent, on unusually

---

[1]This summary of facts is taken from the Class Action Complaint for Violations of Securities Laws. *See* Docket No. 1.

2

1 heavy trading volume. The complaint alleges that the defendants' wrongful acts and omissions caused 2 a precipitous decline in the market value of BigBand's securities, and as a result the class members have 3 suffered significant losses and damages.

**B.   Procedural History**

Plaintiff Bikash Mohan Mohanty commenced Case No. 07-cv-05101 on October 3, 2007. On October 4, 2007, counsel for plaintiff published a notice of the pendency of plaintiff's case on *Marketwire,* a widely circulated national business-oriented wire service. *See* Glancy Decl. Ex. A. Subsequent to the *Mohanty* action, six related actions have been filed in this District.

Both Jones and Sphera Fund filed the instant motions in response to Mohanty's notice. Jones, a British citizen who currently resides in the Republic of Cyprus, describes himself as "a sophisticated investor [who] has served on the board of directors for both privately held and NASDAQ listed companies, and also lectured in e-commerce and entrepreneurship at several United Kingdom universities." Jones Opp'n at 1. Sphera Fund, an Israel-based institutional investor, describes itself as "a private hedge fund investing primarily in equities of Israeli companies traded in U.S., Israel and European markets. Sphera Fund is managed by Sphera Funds Management Ltd., and currently has over $260 million capital under management." Sphera Fund Mot. at 6 n. 4.

## LEGAL STANDARD

**A.   Consolidation**

Federal Rule of Civil Procedure 42(a) provides that "when actions involving common questions of law or fact are pending before the court, it . . . may order all the actions consolidated[.]" Fed. R. Civ. P. 42(a).  The district court has "broad discretion under this rule to consolidate cases pending in the same district." *Investors Research Co. v. United States Dist. Ct.*, 877 F.2d 777 (9th Cir. 1989).  The purpose of consolidation is to avoid the unnecessary costs or delays that would ensue from proceeding separately with claims or issues sharing common aspects of law or fact. *EEOC v. HBE Corp.*, 135 F.3d 543, 550 (8th Cir. 1998).

Additionally, the Private Securities Litigation Reform Act ("PSLRA") directs that cases should

3

1 be consolidated when more than one action is filed on behalf of a class asserting substantially the same
2 claim or claims. *See In re Cendant Corp.Litig.*, 182 F.R.D. 476, 478 (D.N.J.1998) (citing 15 U.S.C. §
3 78u-4(a)(3)(B)(ii)). Further, 15 U.S.C. § 78u-4(a)(3)(B)(ii) requires that any motions for consolidation
4 be decided first, and that "as soon as practicable" thereafter, the Court "shall appoint the most adequate
5 plaintiff as lead plaintiff for the consolidated actions." *Id.*

### B. Appointment of Lead Plaintiff

The selection of the lead plaintiff is governed by the PSLRA. Further, in this jurisdiction, Civil Local Rule 3-7 provides additional filing and certification requirements for private securities class actions.

Under the PSLRA, the plaintiff who files the first class action complaint must publish a notice advising members of the purported class of the (i) pendency of the action, (ii) the claims asserted therein, (iii) the purported class period, and (iv) the option of any member of the purported class to move to be appointed as lead plaintiff of the purported class no later than sixty days after the date on which the notice is published. *See* 15 U.S.C. § 78u-4(a)(3)(A).

After notice is published, the Court shall consider any motion by a class member and shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereafter . . . referred to as the most adequate plaintiff)[.]" *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).

In selecting the lead plaintiff,

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that -
> (aa) has either filed the complaint or made a motion [for designation as lead plaintiff];
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Moreover, the presumption that a plaintiff is adequate may be rebutted:

4

> only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff -
> (aa) will not fairly and adequately protect the interests of the class; or
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth above, in addition to compliance with the PSLRA, litigants must also comply with Civil Local Rule 3-7. Subsections (b) and (c) of Rule 3-7 set forth the requirements parties must comply with when seeking appointment as lead plaintiff. Here, subsection (c) is the applicable section. This rule states, in relevant part:

> Certification by Nonfiling Party Seeking to Serve as Lead Plaintiff. Any party seeking to serve as lead plaintiff, but who does not also file a complaint, need not file the certification required in Civil L.R. 3-7(b), but must at the time of initial appearance state that the party has reviewed a complaint filed in the action and either:
>
> 1)    Adopts its allegations or, if not;
>
> 2)    Specifies the allegations the party intends to assert.

Civ. L.R. 3-7(c) (emphasis in original omitted).

The lead plaintiff selected by the Court has the discretion to retain counsel of its choice to represent the class, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

## ANALYSIS

**A.    Consolidation**

Here, all parties, including the defendants in this action, agree that cases nos. 07-cv-05168 MMC, 07-cv-05327 JSW, 07-cv-05361, 07-cv-05637 WHA, 07-cv-05819 CRB, and 07-cv-05825 MHP should be consolidated with this matter. Consolidation pursuant to Rule 42(a) is proper when actions involve common questions of law and fact. *See Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150 (N.D. Cal. 1999). Courts recognize that class action shareholder suits are ideally suited to consolidation because their unification expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all concerned. *See In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976). Consolidation facilitates discovery, conserves judicial resources,

and reduces the confusion and delay that result from prosecuting related class action cases separately. *Id.*

The actions pending before this Court present similar factual and legal issues, as they all involve the same subject matter, and present the same legal issues. Each alleges the same violations of the Securities Act, and is based on the same wrongful course of conduct. Each names the Company and certain of its officers and/or directors as defendants. Because the actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, pursuant to Federal Rule of Civil Procedure 42(a), this Court grants the parties' request for consolidation. A Stipulation and [Proposed] Order Regarding Consolidation and Scheduling has been submitted to the Court. *See* Docket No. 11. The Court will issue a signed version of the stipulation contemporaneously with this order.

**B.     Appointment of Lead Plaintiff and Approval of Lead Counsel**

In their dueling motions, Jones and Sphera Fund each seek to be appointed as lead plaintiff. Additionally, while Jones eschews this suggestion, Sphera fund suggests that, in the event the Court appoints Jones as lead plaintiff, the Court also appoint Sphera Fund as co-lead plaintiff.

**1.     Appointment of Lead Plaintiff**

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the person or group of persons that:

(aa) has either filed the complaint or made a motion in response to a notice. . . ;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §77z-1(a)(3)(B)(iii). *See also Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 584 (N.D. Cal. 1999).

**(a)     Motion in Response to a Notice**

6

1   Both parties have timely filed their respective motions to be appointed lead plaintiff in response
2   to the plaintiff's notice, within the 60-day time period requirement of the PSLRA. The plaintiff in the
3   first-filed action published notice on *Market Wire*, a national business-oriented wire service, on October
4   4, 2007. Both parties filed their motions on December 3, 2007 -- exactly 60 days later. Accordingly,
5   both parties meet the requirement of 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa) and 15 U.S.C. §
6   78u-4(a)(3)(B)(iii)(I)(aa).

**(b)     Financial Interest**

There is no dispute between the parties that Jones has the largest demonstrated financial interest in this case.   Jones has reportedly sustained losses as an individual investor of $438,617.74,[2] while Sphera Fund sustained losses of $374,889.61,[3] or approximately $64,000 less than Jones. The parties are univocal on this fact. *See* Sphera Fund Opp'n at 1 ("(i) Sphera Fund  . . . with losses of $374,889.61; and (ii) Gwyn Jones . . . with reported losses of $438,617.74."). Although the PSLRA does not provide any specific guidance with respect to the appropriate method of calculating which plaintiff has the "largest financial interest," district courts typically equate "largest financial interest" with the amount of potential recovery. *See, e.g., In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001); *see also In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999).

Accordingly, Jones has demonstrated that he has the largest financial interest in the relief sought by the class within the meaning of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

**(c)     Certification of Named Plaintiff and Compliance with Local Rule 3-7**

Both Jones and Sphera Fund have complied with 15 U.S.C. §§ 78u-4(a)(2)(A)(i)-(vi) and have complied with the requirements of Civil Local Rule 3-7.  *See* Kathrein Decl. Ex. A; Glancy Decl. Ex. B.

**(d)     Rule 23(a)**

---

[2] Jones purchased 50,000 shares, of which he sold 39,000. *See* Jones Opp'n at 3.

[3] Sphera Fund purchased 95,900 shares, all of which it sold. *See* Jones Opp'n at 3.

United States District Court
For the Northern District of California

7

> Rule 23(a) requires that the Court find that:
>
> . . .
>
> (3) the claims or defenses of the representative class are typical of the claims and defenses of the class, and
>
> (4) the representatives of the parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In the context of determining the appropriate lead plaintiff under the PSLRA, the requirements of "typicality" and "adequacy" of representation are the key factors. *See In re David Cavanaugh,* 306 F.3d 726, 730 (9th Cir. 2002); *see also Armour v. Network Assocs.*, 171 F. Supp. 2d 1044, 1051 (N.D. Cal. 2001); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("[t]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff under the PSLRA.").

The "typicality" requirement is satisfied when: (1) the claims of the proposed lead plaintiff arise from the same course of conduct that gives rise to the other purported class members' claims, (2) the claims are based on the same legal theory, and (3) the purported class members and proposed lead plaintiff were injured by the same conduct. *See Armour*, 171 F. Supp. 2d at 1052. Here, both Jones and Sphera Fund appear to meet the typicality requirement of Rule 23(a): Jones and Sphera Fund both purchased BigBand stock during the class period, paid stock prices that they allege were artificially inflated by Defendants' wrongful conduct, and allege that they were damaged by that conduct. Thus, both Jones and Sphera Fund's claims are typical of the class. *See Schonfeld v. Dendreon Corp.*, No. 07-869 (MJP), 2007 U.S. Dist. Lexis 76816, at *6-*7 (W.D. Wash. Oct. 4, 2007).

The "adequacy" requirement of Rule 23(a)(4) is satisfied when the proposed lead plaintiff does not have interests antagonistic to the proposed class, and when the proposed lead plaintiff has retained experienced and capable counsel. *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002). Here, both Jones's and Sphera Fund's interests in prosecuting this case are identical to those of other class members. Both seek to recover against the Defendants for permitting false or misleading statements to be included in BigBand's Registration Statement and other publicly disseminated

1 representations during the class period. Furthermore, both appear to be experienced shareholders with
2 a sophisticated understanding of investing. Finally, both appear to have selected experienced counsel
3 who stand ready to serve the interests of the class. Accordingly, both parties appear to satisfy the
4 requirements of Rule 23.

### 2. Sphera Fund's Attempt to Rebut the Presumption that Jones is the "Most Adequate" Lead Plaintiff

The plain language of the PSLRA provides a rebuttable presumption that the "most adequate plaintiff" to serve as lead plaintiff is the plaintiff that "has the largest financial interest in the relief sought by the class" and otherwise satisfies the requirements of Rule 23. 15 U.S.C. §77z-1(a)(3)(B)(iii). The Court has determined, and the parties do not dispute, that Jones has the largest financial interest in the relief sought. Additionally, the Court has found that both Jones and Sphera Fund satisfy the requirements of Rule 23. Accordingly, Jones is the presumptively most adequate lead plaintiff, and the onus is therefore on Sphera Fund to effectively rebut that presumption.

Sphera Fund offers three arguments in an attempt to rebut this presumption. First, Sphera Fund argues that Congress's goal in crafting the lead plaintiff requirements of the PSLRA was to encourage the selection of institutional investors as lead plaintiffs, and therefore Sphera Fund's status as an institution trumps Jones's status as the plaintiff with the largest financial interest in the action. Second, Sphera Fund argues that Jones is subject to a "unique defense" under Rule 23(b) because he is a resident of the Republic of Cyprus, which Sphera Fund argues does not (or at least might not) give preclusive and binding force to a judgment entered by this Court in this action. Third, Sphera Fund argues that Jones's "ability and qualifications to be lead plaintiff . . . are unknown," and that Jones is a "blank slate" who has not shown the "*bona fides*" necessary to serve as lead plaintiff. *See* Sphera Fund Opp'n at 7-8.

### (a) Sphera Fund's Status as an Institutional Investor

Sphera Fund argues that Congress's goal in crafting the lead plaintiff requirements of the PSLRA was to encourage the selection of institutional investors as lead plaintiffs, and therefore Sphera Fund's status as an institution trumps Jones's status as the plaintiff with the largest financial interest in the

action. It is true that Congress's intent in enacting the PSLRA provisions governing the appointment of lead plaintiff was, in part, to increase the likelihood that institutional investors will serve as lead plaintiffs. *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33 (S.D.N.Y.2005); *see also Sakhrani v. Brightpoint*, 78 F. Supp. 2d 845, 850 (S.D. Ind. 1999)("The PSLRA was enacted with the explicit hope that institutional investors . . . would step forward to represent the class and exercise effective management and supervision of the class lawyers"); *Gluck v. CellStar Corp.*, 976 F. Supp. at 548 (N.D. Tex. 1997)("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors.").

However, a plaintiff's mere status as an institutional investor does not provide any presumption that the institutional plaintiff is a more adequate lead plaintiff than an individual investor with a larger financial interest. *See In re Cavanaugh*, 306 F.3d 726, 730, n.20 (9th Cir. 2002) ("If financial sophistication had been Congress's principal concern, it would not have made the plaintiff who lost the most money the presumptive lead plaintiff"); *Steiner v. Aurora Foods Inc.*, 2000 WL 33911305, *3 (N.D. Cal. June 5, 2000) ("[T]he PSLRA does not limit the presumption of most adequate plaintiff to institutional investors. Rather, the statute merely provides that the person or group of persons with the largest financial interest in the relief sought by the class is entitled to the presumption of most adequate plaintiff" (citations omitted); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 821 (N.D. Ohio 1999) ("The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor.").

Sphera Fund's argument that its status as an institutional investor is sufficient to trump Jones's status as the movant with the largest financial interest was squarely rejected by the court in *Tanne v. Autobytel*, 226 F.R.D. 659 (C.D. Cal. 2005). Following the Ninth Circuit's guidance in *Cavanaugh*, the court in *Tanne* reasoned:

> Although the PSLRA was enacted to encourage institutional investors to take a more active role in securities litigation, the Ninth Circuit has held that it does not 'require[] the district court to select the plaintiff it believes is the most sophisticated investor available.' . . . As a consequence, there is no *per se* rule requiring that an institutional investor be appointed lead plaintiff in lieu of an individual who has a larger stake in the litigation.

1  *Id.* at 670 (citing *Cavanaugh*, 306 F.3d at 737). As discussed more fully below, this Court has
2  determined that Jones is an adequate lead plaintiff, and, in accordance with the court's reasoning in
3  *Tanne*, it can discern no advantage in appointing Sphera Fund as lead plaintiff simply because it is an
4  institution. Had Congress intended to craft a *per se* rule to that effect it could have easily done so; it
5  chose not to. Therefore, this factor fails to rebut the presumption that Jones is the most adequate lead
6  plaintiff.

### (b)   Unique Defenses

8  The presumption that the most adequate plaintiff to serve as lead plaintiff is the plaintiff that has
9  the largest financial interest in the relief sought by the class can be rebutted by proof that the plaintiff
10 "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."
11 15 U.S.C. § 78u-4(a)(3)(B) (iii)(II)(bb).

12 Sphera Fund argues that Jones, as a resident of the Republic of Cyprus, may be subject to a
13 unique defense , i.e., a Rule 23(b)(3) superiority defense, rendering him an inadequate lead plaintiff and
14 class representative. Sphera Fund avers that "[t]he laws of Cyprus, in particular Rule 9 of Cyprus Civil
15 Procedure Rules, only authorize representative civil actions where the absent plaintiffs explicitly sign
16 a power of attorney to the representative plaintiff." Sphera Fund Reply at 1.  Thus, Sphera argues, "the
17 *mere potential* that Cypriot courts may not give preclusive and binding force to a judgment entered by
18 this Court in this action – as against Cypriot public policy for attempting to bind absent class members
19 without explicit approval to be represented – renders Gwyn Jones an inadequate lead plaintiff." *Id.*
20 (emphasis in original).

21 It is true that some courts have found that the presumption that a plaintiff is the "most adequate
22 lead plaintiff" can be rebutted where the presumptive lead plaintiff is a foreign entity and the courts of
23 the presumptive lead plaintiff's country may not give *res judicata* effect to an American court's
24 judgment. *See Borochoff v. Glaxosmithkline, PLC*, 246 F.R.D. 201, 203 (S.D.N.Y. 2007) ("If this
25 Court's judgment on the merits neither protects a prevailing defendant against relitigation in Germany,
26 nor grants a prevailing German plaintiff an enforceable damage judgment, then for [that plaintiff] a class

11

action is not 'superior to other available methods for the fair and efficient adjudication of the controversy.'")(citing Fed. R. Civ. P. 23(b)(3)); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 352-53 (D. Md. 2003) (presumption of most adequate lead plaintiff rebutted because courts of the foreign purchaser's country may not give *res judicata* effect to an American court's judgment).

However, the arguments and evidence presented by Sphera Fund are a totally inadequate basis for this Court to form any opinion as to whether Cypriot courts would give binding effect to this Court's judgments. As an initial matter, Sphera Fund does not even so much as provide an authenticated version of the Cypriot Civil Procedure Rules, but instead only provides a link to a webpage that is primarily in Greek and appears to contain translations of various Cypriot laws. *See* Sphera Fund Reply at 1 n. 1 ("The Cypress [sic] Civil Procedure Rules were obtained from, and are available at www.cylaw.org/cpr-en.html."). Sphera Funds provides absolutely no evidence that this webpage presents accurate, let alone canonical, translations of the laws of Cyprus. Moreover, the versions of the rules on this website appear to use idiomatic phraseology that is literally Greek to this Court,[4] and it is not clear that the text of "Civil Rule 9" actually precludes Cypriot courts from giving binding effect to class action judgements. In fact, Sphera Fund has presented no expert testimony – or even textual analysis – demonstrating that the laws of Cyprus actually "only authorize representative civil actions where the absent plaintiffs explicitly sign a power of attorney to the representative plaintiff" as Sphera Fund claims. The Court therefore has no basis on which to render an informed ruling on this question. *See Glaxosmithkline*, 246 F.R.D. at 203 (relying on expert testimony in determining there was a "substantial" possibility that foreign courts would not enforce a decision in favor of defendant against foreign plaintiffs); *Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 486 (E.D. Pa. 2007) ("Defendants did not consult with experts on Austrian law to determine the likelihood that an Austrian court would

---

[4]*e.g.*, "Where there are enumerous persons having the same interest in one cause or matter, one or more of such persons may be authorized by the Court or a Judge to sue or defend in such cause or matter, on behalf or for the benefit of all persons so interested . . . Before any such order is made a power of attorney signed by the persons to be represented and certified by a Registrar or certifying officer or the Κοινοτάρχης and two azas of their village, and empowering the person or persons, who are to sue or defend on their behalf, to represent them in the cause or matter specified in the power of attorney, shall be filed with the writ of summons . . . ."

12

1 recognize such a claim or fail to enforce a U.S. judgment in this case . . .Such a speculative argument is simply not sufficient to support the exclusion of [the foreign plaintiff] or an unknown number of foreign investors, especially when they are otherwise entitled to sue in U.S. courts.").

Finally, while courts have reasoned that "a strong possibility or near certainty that a foreign court will not recognize a judgment in favor of the defendant as a bar to the action of its own citizens may be the basis for eliminating foreign purchasers from the class," *In re Royal Ahold.*, 219 F.R.D. at 352-53, on the evidence and arguments before this Court, this concern applies equally to Sphera Fund, an Israeli entity, as to Jones, a British citizen residing in Cyprus. According to Sphera Fund's website, it is "an off-shore private hedge fund…organized in a limited partnership structure." Kathrein Decl. Ex. A. Sphera Fund Management is controlled by Shrem Fudim Kelner & Co., Ltd., a Tel Aviv-based financial services company. Kathrein Decl. Exs. B and C. While Sphera Fund states generally that Israeli courts "generally give binding, preclusive effect to judgments entered by an American court," Sphera Fund Reply at 4, it provides no specific argument that an Israeli court would give preclusive effect to a securities class action judgment such as may be rendered in this case. Accordingly, this concern is insufficient to rebut the presumption that Jones is the most adequate lead plaintiff.[5]

### (c) Jones's *Bona Fides*

Once the Court has determined which movant has the largest financial interest in the litigation, "[i]t must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a)," with the court relying on the presumptive lead plaintiff's initial filings and sworn certification. *In re Cavanaugh*, 306 F. 3d at 73. In order to be appointed lead plaintiff under the PSLRA, a plaintiff's filings must make a prima facie showing of its adequacy to serve in that role. *See id.*; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). However, "the fact that a searching inquiry under Rule 23 is not required at

---

[5]Additionally, while he is a resident of Cyprus, Jones is a citizen of the United Kingdom. The cases relied on by Sphera Fund only discuss the concerns relevant here in the context of citizenry, not residency. As noted in *Glaxosmithkline*, English courts are likely to give preclusive effect to judgment from a U.S. court. *Glaxosmithklein*, at 203-05 (appointing English foreign investor as lead plaintiff).

13

1 this stage of the litigation does not mean that the Court must pay mere lip service to the requirement of
2 the statute that a prospective lead plaintiff satisf[y] the requirements of Rule 23." *In re Flight Safety*
3 *Technologies, Inc. Securities Litigation*, 231 F.R.D. 124, 128 (D. Conn. 2003)

4 Sphera Fund agues that, "[i]n this case, the Court is faced with a dearth of identifying information concerning Jones, who proposes to undertake this important fiduciary role on behalf of absent class members without providing even basic information for the Court to evaluate his or her qualifications." Sphera Fund Opp'n at 8. Sphera Fund continues, "Jones remains an unknown person, and has failed to provide any meaningful information with which the Court can determine whether, for example, Jones has the motivation, skills, experience, or inclination to effectively monitor a complex, securities class action litigation which potentially could span several years." Sphera Fund Reply at 1.

11 The gravamen of this argument is simply an *ad hominem* attack on Jones. *See* Sphera Fund Reply at 3-4. ("What little is known about Jones indicates that he is, at best, prone to making only extremely short-term commitments before abandoning one endeavor and moving on to another position, another industry or another country . . . It frankly boggles the mind that such a globe-trotting individual can be entrusted to effectively monitor protracted litigation on behalf of a class."). Indeed, in its apparent desperation, Sphera Fund goes so far as to submit an entire declaration the sole purpose of which is to point out a discrepancy in Jones's profile on the social networking website LinkedIn.com. *See* Sphera Fund Reply at 3 ("Significantly, in addition to his apparent wanderlust, it appears that Jones's resume [on his LinkedIn profile] misrepresents his academic credentials."); *see also* Gauthier Decl. ¶¶ 3-13.

20 This sophomoric argument does little to persuade the Court that Jones is not an adequate lead plaintiff. As set forth in his opposition papers, Jones appears to be "a sophisticated investor and has served on the board of directors of both privately held and NASDAQ listed companies, and also lectured in e-commerce and entrepreneurship at several United Kingdom universities." Jones Opp'n at 1. As detailed in Jones's *curriculum vitae*, he served as a Director of eCleanUK, a privately held on-line cleaning service; as the CMO of HumanConcepts, a privately held computer software provider; as a Vice President of VistaPrint, a publicly held on-line printing service; as an Executive Vice President

1  of Software Publishing Corp., a publicly held computer software company; as CEO and Director of
2  Serif, a privately held computer software company; and as CEO and Director of LaserMaker, a privately
3  held printing company. *See* Supp. Kathrein Decl., Ex. A. In addition, he has several academic degrees
4  in business and he has lectured at the University of California, Berkeley and at the University of
5  Portsmouth, United Kingdom. *Id*. Accordingly, Jones appears to be qualified to understand and fulfill
6  the role of lead plaintiff in this the litigation.

Sphera Fund has failed to rebut the presumption that Jones, as an otherwise qualified individual investor with the largest financial stakes in this action, is the most adequate lead plaintiff. Moreover, consistent with its discussion of Sphera Fund's status as an institutional investor above, the Court discerns no advantage in appointing Sphera Fund as co-lead plaintiff. *See Tanne*, 226 F.R.D. at 673 (rejecting the argument that an institution should be appointed as co-lead plaintiff simply because it is an institution as "fundamentally at odds with *Cavanaugh's* interpretation of the PSLRA and its outlining of the process to be used in identifying a lead plaintiff.").

### 3.     Selection of Counsel

Jones has requested that the Court approve his selection of the law firms of Hagens Berman Sobol Shapiro LLP, and Kahn Gauthier Swick, LLC, to serve as co-lead counsel. The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Jones contends that these firms are "experienced securities litigators capable of vigorously prosecuting this litigation." Jones Opp'n at 1. Having reviewed the firms' resumes, the Court is satisfied that the firms of Hagens Berman Sobol Shapiro and Kahn Gauthier Swick are sufficiently qualified and experienced in securities class action litigation to serve as co-lead counsel. *See* Kathrein Decl., Ex. D (firm resumes).

As such, the Court hereby approves Jones's selection of counsel of Hagens Berman Sobol Shapiro LLP and Kahn Gauthier Swick, LLC as co-lead counsel.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED THAT Jones's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel [Docket No. 12] is GRANTED. Gwyn Jones is HEREBY APPOINTED to serve as lead plaintiff. Sphera Fund's motion [Docket No. 15] is DENIED. Jones's unopposed Administrative Motion to File a Sur-Reply in Response to Newly Raised Arguments of Sphera Fund Pursuant to Local Rule 7-11 [Docket No. 43] is GRANTED.

IT IS FURTHER ORDERED THAT Jones's selection of Hagens Berman Sobol Shapiro LLP and Kahn Gauthier Swick, LLC to serve as co- lead counsel is APPROVED. Co-lead counsel shall have authority to speak for plaintiffs in matters regarding pretrial and trial procedure and settlement negotiations, and shall make all work assignments in such manner as to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort. Co-lead counsel shall be responsible for coordination of all activities and appearances on behalf of plaintiffs and for the dissemination of notices and orders of this Court. No motion, request for discovery or other pretrial proceedings shall be initiated or filed by plaintiffs except through co-lead counsel. Co-lead counsel also shall be available and responsible for communications to and from this Court. Co-lead counsel shall be responsible for the creation and maintenance of a master service list of all parties and their respective counsel. Defendants' counsel may rely upon all agreements made with Co-lead counsel, or other duly authorized representatives of plaintiffs, and such agreements shall be binding on plaintiffs.

Contemporaneously with this order, the Court will issue a signed version of the stipulation submitted by the parties consolidating cases nos. 07-cv-05168 MMC, 07-cv-05327 JSW, 07-cv-05361 SI, 07-cv-05637 WHA, 07-cv-05819 CRB, and 07-cv-05825 MHP with this matter.

IT IS FURTHER ORDERED THAT the parties shall appear for a telephonic Case Management Conference on April 10, 2008 at 2:45 p.m. The parties shall **meet and confer** prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than 10 days prior to the Case Management Conference that complies with the Standing Order For All Judges Of The Northern District Of California and the Standing Order of this Court. Plaintiffs shall be

responsible for filing the statement as well as for arranging the conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

    IT IS SO ORDERED.

Dated: 2/13/08

                                  SAUNDRA BROWN ARMSTRONG
                                  United States District Judge