# EXHIBIT A

1

Calendar No. 355

| 105TH CONGRESS 2d Session | SENATE | REPORT 105–182 |
|---|---|---|

## THE SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998

———

R E P O R T

OF THE

## COMMITTEE ON BANKING, HOUSING, AND URBAN AFFAIRS UNITED STATES SENATE

TO ACCOMPANY

## S. 1260

TOGETHER WITH

## ADDITIONAL VIEWS



MAY 4, 1998.—Ordered to be printed

———

U.S. GOVERNMENT PRINTING OFFICE

59–010                    WASHINGTON : 1998

Calendar No. 355

| 105TH CONGRESS 2d Session | SENATE | REPORT 105–182 |
|---|---|---|

THE SECURITIES LITIGATION UNIFORM STANDARDS ACT
OF 1998

_____

MAY 4, 1998.—Ordered to be printed

_____

Mr. D'AMATO, from the Committee on Banking, Housing, and
Urban Affairs, submitted the following

# REPORT

[To accompany S. 1260]

### INTRODUCTION

The Committee on Banking, Housing and Urban Affairs, to
which was referred the bill (S. 1260), to amend the Securities Act
of 1933 and the Securities Exchange Act of 1934 to limit the con-
duct of securities class actions under State law, having considered
the same, reports favorably thereon with an amendment in the na-
ture of a substitute, and recommends that the bill as amended do
pass.

### HISTORY OF THE LEGISLATION

On July 24, 1997, the Subcommittee on Securities held an over-
sight hearing on the operation of the Private Securities Litigation
Reform Act (hereinafter referred to as either the "PSLRA" or the
"1995 Act") which was passed over presidential veto during the
104th Congress (PL–104–67). At this hearing testimony was re-
ceived from: Arthur Levitt, Chairman of the Securities and Ex-
change Commission; Keith Paul Bishop, Commissioner, California
Department of Corporations; Dr. Joseph A. Grundfest, Professor,
Stanford Law School and former Commissioner, Securities and Ex-
change Commission; Mr. Michael A. Perino Lecturer, Stanford Law
School; Mr. Joseph Polizotto, Managing Director, Office of the Gen-
eral Counsel, Lehman Brothers (on behalf of the Securities Indus-
try Association); Mr. Kenneth Janke, Sr., President and Chief Ex-
ecutive Officer, National Association of Investors Corporation; Mr.
Richard Miller, General Counsel, American Institute of Certified

2

Public Accountants; Mr. Leonard Simon, Milberg Weiss Bershad Hynes and Lerach (on behalf of the National Association of Securities and Commercial Law Attorneys); Mr. Brian Dovey, President, National Venture Capital Association and; Mr. Robert C. Hinckley, Vice President, Strategic Plans and Programs, Xilinx (on behalf of the American Electronics Association).

As a result of the testimony received at the July 1997 hearing, Senators Gramm, Dodd, Boxer, Faircloth, Hagel and Moseley-Braun, together with seven other Senators who are not members of the Committee introduced on October 7, 1997, S. 1260, the "Securities Litigation Uniform Standards Act of 1997" (hereinafter referred to as either "Uniform Standards" or "S. 1260") Subsequently, a total of forty Senators cosponsored the legislation, including twelve from the Committee (Senators Gramm. Dodd, Boxer, Faircloth, Hagel, Moseley-Braun, Bennett, Grams, Kerry, Mack, Allard and Enzi).

On October 29, 1997 and on February 23, 1998, the Subcommittee on Securities held legislative hearings on S. 1260. Witnesses testifying on October 29, 1997 included: U.S. Representative Rick White; U.S. Representative Anna Eshoo; Arthur Levitt, Chairman, the Securities and Exchange Commission (SEC); Isaac C. Hunt, Jr., Commissioner, Securities and Exchange Commission; Robert C. Hinckley, Vice President, Strategic Plans and Programs, Xilinx, who testified on behalf of the American Electronics Association; Harry Smith, Mayor of Greenwood, Mississippi, who testified on behalf of the National League of Cities; Herbert Milstein of Cohen, Milstein, Hausfeld & Toll, who testified on behalf of the National Association of Securities and Commercial Law Attorneys; Professor Michael Perino, Stanford Law School; Thomas E. O'Hara, Chairman, Board of Trustees, the National Association of Investors Corporations and Daniel Cooperman, Senior Vice President, General Counsel, and Corporate Secretary, Oracle Corporation, who testified on behalf of the Software Publishers Association.

Witnesses testifying on February 23, 1998 included: Boris Feldman, Wilson, Sonsini, Goodrich & Rosati; Professor Richard W. Painter, Cornell Law School; Michael H. Morris, Vice President and General Counsel, Sun Microsystems; Mary Rouleau, Legislative Director, Consumer Federation of America; J. Harry Weatherly, Director of Finance, Mecklenburg County, North Carolina, on behalf of the Government Finance Officers Association; and John F. Olson, Gibson, Dunn & Crutcher.

On April 29, 1998, the Committee met in Executive Session to consider and adopt an amendment in the nature of a substitute that was offered by Chairman D'Amato and Senators Gramm and Dodd. The Committee also adopted an amendment, by voice vote, providing two findings to the bill. The amendment was offered by Chairman D'Amato and Senators Gramm and Dodd. The amendment makes clear the Committee's intention to enact this legislation in order to prevent state laws from being used to frustrate the operation and goals of the 1995 Reform Act. The legislation was ordered reported from Committee by a vote of 14–4. Senators Shelby, Sarbanes, Bryan and Johnson voted against this legislation.

3

PURPOSE AND SCOPE OF LEGISLATION

The need for this legislation became apparent during a Securities Subcommittee hearing on July 24, 1997. This hearing was held to review the status of the implementation and impact of the "Private Securities Litigation Reform Act of 1995." [1] During the course of that hearing one disturbing trend became apparent; namely, that there was a noticeable shift in class action litigation from federal to state courts. At this hearing, one witness pointed out the dangers of maintaining differing federal and state standards of liability for nationally-traded securities:

> Disparate, and shifting, state litigation procedures may expose issuers to the potential for significant liability that cannot easily be evaluated in advance, or assessed when a statement is made. At a time when we are increasingly experiencing and encouraging national and international securities offerings and listings, and expending great effort to rationalize and streamline our securities markets, this fragmentation of investor remedies potentially imposes costs that outweigh the benefits. Rather than permit or foster fragmentation of our national system of securities litigation, we should give due consideration to the benefits flowing to investors from a uniform national approach. [2]

Former SEC Commissioner Joseph Grundfest summarized this post 1995 Act increase in state securities class actions in testimony co-authored with his fellow Stanford Law School faculty member Michael Perino:

> The relative stability of the aggregate litigation rate masks a significant shift of activity from federal to state court * * *. There is widespread agreement that these figures represent a substantial increase in state court litigation. Two phenomena seem to explain the bulk of this shift. First, there appears to be a "substitution effect" whereby plaintiff's counsel file state court complaints when the underlying facts appear not to satisfy new, more stringent federal pleading requirements, or otherwise seek to avoid the substantive or procedural provisions of the Act. Second plaintiffs appear to be resorting to increased parallel state and federal litigation in an effort to avoid federal discovery stays or to establish alternative state court venues for settlement of federal claims. [3]

While there was some disagreement as to the exact size of the increase in state class-action filings, the overall evidence received by the Committee is compelling. [4] As one witness testified "(t)he

---

[1] Pub Law No. 104–67 (Dec. 22, 1995).

[2] Testimony of Stephen M.H. Wallman, Commissioner, Securities and Exchange Commission; submitted to the Subcommittee on Securities' "Oversight Hearing on the Private Securities Litigation reform Act of 1995" (the "Reform Act Hearing"), July 24, 1997, p. 1.

[3] Joint prepared statement of Joseph A. Grundfest and Michael A. Perino, "Reform Act Hearing," July 24, 1997, p. 6.

[4] "* * * the apparent shift to state court may be the most significant development in securities litigation post-Reform Act." Securities and Exchange Commission, Report to the President and the Congress on the First Year of Practice Under the Private Securities Litigation Reform Act of 1995, p. 69 (1997); see also Statement of Senator Phil Gramm, Senate Subcommittee on

Continued

4

single fact is that state-court class actions involving nationally traded securities were virtually unknown prior to the [1995 Act]; they are brought with some frequency now." [5]

Further, the Committee has found that this state class-action trend has had an impact beyond the number of, and dollar amounts involved in, the class actions filed. This trend has created a ripple-effect that has inhibited small, high-growth companies in their efforts to raise capital, and has damaged the overall efficiency of our capital markets.[6] Specifically, the increased risk of state court class actions has had a chilling effect on the use of the "safe-harbor" and other important provisions of the 1995 Act.[7] The safe harbor was intended to help get valuable financial forecasts and forward-looking information to investors, so that these investors could make decisions with as much information as possible; as Thomas O'Hara of the National Association of Investors Corporation ("NAIC"), testified:

> The key to becoming successful with high-tech investments is a willingness to recognize—and tolerate—the inherent volatility of the business and access to crucial forward-looking information so an investor can make a wise decision.[8]

A number of witnesses at the July 1997 hearing advocated legislation to establish uniform standards for private securities class action litigation.[9] This legislation is an outgrowth of the July 1997 hearings and subsequent investigation and oversight by the Committee.

Some critics of establishing a uniform standard of liability have attacked such legislation as being an affront on Federalism and contrary to the recent trend towards reinforcing state rights.[10] Proponents of the legislation have argued that we live in an information age in which we have truly national, if not international, securities markets and that uniform standards are entirely consistent with Congress's preeminent power over the regulation of interstate and foreign commerce. The Committee, while sensitive to both these considerations, found the interest in promoting efficient national markets to be the more convincing and compelling consideration in this context.

---

Securities Hearing, February 23, 1998, entering into the record materials submitted by Price, Waterhouse, LLP documenting both the rise in state securities class action cases and the changing nature of those cases; see also Michael A. Perino, Fraud and Federalism: Preempting Private State Securities Fraud Causes of Action, Stanford Law Review (forthcoming 1998), manuscript at 31, n. 127; see also Joseph A. Grundfest and Michael A. Perino; Securities Litigation Reform: The First Year's Experience (Release 97.1), Summary of Major Findings, p. ii–iii; Stanford Law School; February 27, 1997.

[3] Written testimony of John F. Olson of Gibson, Dunn & Crutcher, "Hearing on S. 1260," February 23, 1998, p. 5.

[6] Joint prepared statement of Joseph A. Grundfest and Michael A. Perino, "Reform Act Hearing," July 24, 1997, p. 6.

[7] See, e.g., Prepared statement of Michael Morris, Vice President and General Counsel, Sun Microsystems, "Hearing on S. 1260," February 23, 1998.

[8] Written statement of Thomas E. O'Hara, Chairman, NAIC, "Hearing on S. 1260," October 29, 1997.

[9] See, e.g., Grundfest and Perino, supra, note 2; Written statement of Robert C. Hinckely, Vice President Strategic Plans and Programs, XILINX, on behalf of The American Electronics Association, the Reform Act Hearing, July 27, 1997, p. 17.

[10] Written statement of Hon. Harry Smith, Mayor, Greenwood, Mississippi, on behalf of the National League of Cities, "Hearing on S. 1260," October 29, 1997, p. 8.

7

should be subject to the bill's provisions. To address this goal, and to establish objective criteria in the application of the definition, the Committee specifically included a threshold number of fifty or more persons or prospective class members as part of the definition of a class action under this legislation.

Section 2(f)(1)(A)(i)(II) of the legislation provides a definition that closely tracks the relevant provisions of Rule 23 of the Federal Rules of Civil Procedure in which a suit is brought by representative plaintiffs on behalf of themselves and other unnamed parties. Section 2(f)(1)(A)(i)(I), however, provides that any single lawsuit is treated as a class action if it seeks damages on behalf of more than fifty persons and questions of law or fact common to the prospective class predominate, without regard to questions of individualized reliance. The predominance requirement, modeled on Rule 23, is included to assure that claims that are not closely related, but that are included in a single proceeding only for the purposes of convenience are not treated as a class action. The Committee is conscious, however, of the danger that the predominance requirement could be used as a loophole to bring a single suit that names many plaintiffs. If such a suit is brought under a state law that requires proof of each individual plaintiff's reliance on a defendant's alleged misstatement or omission, the necessity of proving reliance on an individual basis might mean that common questions would not predominate and the suit accordingly would not be treated as a class action.

Indeed the Supreme Court stated in *Basic, Inc.* v. *Levinson* [485 U.S. 224, 242, (1988)] that "requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would * * * prevent plaintiffs from proceeding with a class action, since individual issues would * * * overwhelm the common ones." To avoid this problem, the definition provides that the predominance inquiry must be undertaken without reference to issues of individualized reliance, so that the necessity of proving reliance on an individual basis would not defeat treatment of the suit as a class action.

Section 2(f)(1)(A)(ii) is a definition of class action that is intended to prevent evasion of the bill through the use of so-called "mass actions." These kinds of actions are now brought in product liability, environmental tort and similar cases. In practice, such suits may function very much like traditional class actions and, because they involve many plaintiffs, they may have a very high settlement value. They accordingly may be abused by lawyers who seek to evade the provisions of this Act in order bring coercive strike suits.

Subpart (A)(ii) addresses the Committee's concern by including in the definition of class action any group of lawsuits that are filed or pending in the same court, that in the aggregate seek damages on behalf of more than fifty persons, that involve common questions of law or fact, and which are joined, consolidated, or otherwise proceed as a single action for any purpose. The Committee does not intend for the bill to prevent plaintiffs from bringing bona fide individual actions simply because more than fifty persons commence the actions in the same state court against a single defendant.

8

However, the provisions of the bill would apply where the court orders that the suits be joined, consolidated, or otherwise proceed as a single action at the state level. The Committee also notes that when such suits proceed as a single action in state court, it is frequently at the request of the plaintiffs.

The class action definition has been changed from the original text of S. 1260 to ensure that the legislation does not cover instances in which a person or entity is duly authorized by law, other than a provision of state or federal law governing class action procedures, to seek damages on behalf of another person or entity. Thus, a trustee in bankruptcy, a guardian, a receiver, and other persons or entities duly authorized by law (other than by a provision of state or federal law governing class action procedures) to seek damages on behalf of another person or entity would not be covered by this provision.

Finally, while the Committee believes that it has effectively reached those actions that could be used to circumvent the reforms enacted by Congress in 1995 as part of the Private Securities Litigation Reform Act, it remains the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.

SECTION-BY-SECTION ANALYSIS

*Section 1. Short title*

The short title of the bill is the Securities Litigation Uniform Standards Act of 1998.

*Section 2. Findings*

Congress finds that in order to avoid the thwarting of the purpose of the Private Securities Litigation Reform Act of 1995, national standards for nationally traded securities must be enacted, while preserving the appropriate enforcement powers of state regulators, and the right of individuals to bring suit.

*Section 3. Limitation on remedies*

Subsection 3(a) amends Section 16 of the Securities Act of 1933 as follows:

Subsection 16(a) is a savings clause.

Subsection 16(b) provides that no class action based on State law alleging fraud in connection with the purchase or sale of covered securities may be maintained in State or Federal court.

Subsection 16(c) provides that any class action described in Subsection (b) that is brought in a State court shall be removable to a Federal district court, and may be dismissed pursuant to the provisions of subsection (b).

Subsection 16(d) of the new section 16 provides for the preservation of certain law suits brought under State law affecting conduct of corporate officers with respect to certain corporate actions, including tender offers, exchange offers or the exercise of dissenter's or appraisal rights.

9

Subsection 16(e) of the new section 16 reemphasizes that State securities commissions retain their jurisdiction to investigate and bring enforcement actions.

Subsection 16(f) of the new section 16 provides for definitions under the section, including definitions of "class action," "covered security," and "affiliate of the issuer." "Class action" is defined so as to capture mass actions, but to exclude shareholder derivative actions and actions by a group of less than 50 individuals or entities. "Covered securities" includes securities satisfy the definition of that term given in subsection 18(b)(1) and 18(b)(2) of the Securities Act of 1933.

Subsection 3(b) amends Section 28 of the Securities Exchange Act of 1934 so as to effect the changes to that section substantially similar to, and consistent with, the amendments that subsection 3(a) makes to the Securities Act of 1933.

*Section 4. Applicability*

The changes in law made by the bill do not affect any court action commenced before and pending on the date of enactment of the legislation.

REGULATORY IMPACT STATEMENT

This legislation is designed to address and unforeseen "loophole" in the 1995 Private Securities Litigation Act, that has blocked that law from accomplishing its stated goal of reforming private securities litigation. Because S.1260 seeks to achieve further reforms in the private securities litigation system, the Committee believes that this legislation will have little or no regulatory impact.

COST OF LEGISLATION

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
*Washington, DC, May 1, 1998.*

Hon. ALFONSE M. D'AMATO,
*Chairman, Committee on Banking, Housing and Urban Affairs,*
*U.S. Senate, Washington, DC.*

DEAR MR. CHAIRMAN: The Congressional Budget Office has prepared the enclosed cost estimate for S. 1260, the Securities Litigation Uniform Standards Act of 1998.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contacts are Kathleen Gramp (for federal costs), and Pepper Santalucia (for the state and local impact).

Sincerely,

JUNE E. O'NEILL, *Director.*

Enclosure.

CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

*S. 1260—Securities Litigation Uniform Standards Act of 1998*

S. 1260 would amend existing law related to class actions involving certain types of securities fraud. Under this bill, certain class