# EXHIBIT B

| 105TH CONGRESS 2d Session | HOUSE OF REPRESENTATIVES | REPORT 105–803 |
|---|---|---|

## SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998

OCTOBER 9, 1998.—Ordered to be printed

Mr. BLILEY, from the committee of conference,
submitted the following

## CONFERENCE REPORT

[To accompany S. 1260]

The committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 1260), to amend the Securities Act of 1933 and the Securities Exchange Act of 1934 to limit the conduct of securities class actions under State law, and for other purposes, having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the Senate recede from its disagreement to the amendment of the House and agree to the same with an amendment as follows:

In lieu of the matter proposed to be inserted by the House amendment, insert the following:

***SECTION 1. SHORT TITLE.***

*This Act may be cited as the "Securities Litigation Uniform Standards Act of 1998".*

***SEC. 2. FINDINGS.***

*The Congress finds that—*

*(1) the Private Securities Litigation Reform Act of 1995 sought to prevent abuses in private securities fraud lawsuits;*

*(2) since enactment of that legislation, considerable evidence has been presented to Congress that a number of securities class action lawsuits have shifted from Federal to State courts;*

*(3) this shift has prevented that Act from fully achieving its objectives;*

★ 69–006

12

(1) Section 203(e)(8)(B) (15 U.S.C. 80b–3(e)(8)(B)) is amended by inserting "or" after the semicolon.

(2) Section 222(b)(2) (15 U.S.C. 80b–18a(b)(2)) is amended by striking "principle" and inserting "principal".

(e) TRUST INDENTURE ACT OF 1939.—The Trust Indenture Act of 1939 (15 U.S.C. 77aaa et seq.) is amended as follows:

(1) Section 303 (15 U.S.C. 77ccc) is amended by striking "section 2" each place it appears in paragraphs (2) and (3) and inserting "section 2(a)".

(2) Section 304(a)(4)(A) (15 U.S.C. 77ddd(a)(4)(A)) is amended by striking "(14) of subsection" and inserting "(13) of section".

(3) Section 313(a) (15 U.S.C. 77mmm(a)) is amended—

(A) by inserting "any change to" after the paragraph designation at the beginning of paragraph (4); and

(B) by striking "any change to" in paragraph (6).

(4) Section 319(b) (15 U.S.C. 77sss(b)) is amended by striking "the Federal Register Act" and inserting "chapter 15 of title 44, United States Code,".

**SEC. 302. EXEMPTION OF SECURITIES ISSUED IN CONNECTION WITH CERTAIN STATE HEARINGS.**

Section 18(b)(4)(C) of the Securities Act of 1933 (15 U.S.C. 77r(b)(4)(C)) is amended by striking "paragraph (4) or (11)" and inserting "paragraph (4), (10), or (11)".

And the House agree to the same.

TOM BLILEY,
M.G. OXLEY,
BILLY TAUZIN,
CHRIS COX,
RICK WHITE,
ANNA G. ESHOO,
*Managers on the Part of the House.*

ALFONSE D'AMATO,
PHIL GRAMM,
CHRIS DODD,
*Managers on the Part of the Senate.*

JOINT EXPLANATORY STATEMENT OF THE COMMITTEE OF
CONFERENCE

The managers on the part of the House and the Senate at the
conference on the disagreeing votes of the two Houses on
the amendment of the House to the bill (S. 1260) to amend the Securi-
ties Act of 1933 and the Securities Exchange Act of 1934 to limit
the conduct of securities class actions under State law, and for
other purposes, submit the following joint statement to the House
and the Senate in explanation of the effect of the action agreed
upon by the managers and recommended in the accompanying con-
ference report:

THE SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998

UNIFORM STANDARDS

Title 1 of S. 1260, the Securities Litigation Uniform Standards
Act of 1998, makes Federal court the exclusive venue for most se-
curities class action lawsuits. The purpose of this title is to prevent
plaintiffs from seeking to evade the protections that Federal law
provides against abusive litigation by filing suit in State, rather
than in Federal, court. The legislation is designed to protect the in-
terests of shareholders and employees of public companies that are
the target of meritless "strike" suits. The purpose of these strike
suits is to extract a sizeable settlement from companies that are
forced to settle, regardless of the lack of merits of the suit, simply
to avoid the potentially bankrupting expense of litigating.

Additionally, consistent with the determination that Congress
made in the National Securities Markets Improvement Act[1]
(NSMIA), this legislation establishes uniform national rules for se-
curities class action litigation involving our national capital mar-
kets. Under the legislation, class actions relating to a "covered se-
curity" (as defined by section 18(b) of the Securities Act of 1933,
which was added to that Act by NSMIA) alleging fraud or manipu-
lation must be maintained pursuant to the provisions of Federal se-
curities law, in Federal court (subject to certain exceptions).

"Class actions" that the legislation bars from State court in-
clude actions brought on behalf of more than 50 persons, actions
brought on behalf of one or more unnamed parties, and so-called
"mass actions," in which a group of lawsuits filed in the same court
are joined or otherwise proceed as a single action.

The legislation provides for certain exceptions for specific types
of actions. The legislation preserves State jurisdiction over: (1) cer-
tain actions that are based upon the law of the State in which the

---

[1] Public law 104–290 (October 11, 1996).

14

issuer of the security in question is incorporated,[2] (2) actions brought by States and political subdivisions, and State pension plans, so long as the plaintiffs are named and have authorized participation in the action; and (3) actions by a party to a contractual agreement (such as an indenture trustee) seeking to enforce provisions of the indenture.

Additionally, the legislation provides for an exception from the definition of "class action" for certain shareholder derivative actions.

Title II of the legislation reauthorizes the Securities and Exchange Commission (SEC or Commission) for Fiscal Year 1999. This title also includes authority for the SEC to pay economists above the general services scale.

Title III of the legislation provides for corrections to certain clerical and technical errors in the Federal securities laws arising from changes made by the Private Securities Litigation Reform Act of 1995[3] (the "Reform Act") and NSMIA.

The managers note that a report and statistical analysis of securities class actions lawsuits authored by Joseph A. Grundfest and Michael A. Perino reached the following conclusion:

> The evidence presented in this report suggests that the level of class action securities fraud litigation has declined by about a third in federal courts, but that there has been an almost equal increase in the level of state court activity, largely as a result of a "substitution effect" whereby plaintiffs resort to state court to avoid the new, more stringent requirements of federal cases. There has also been an increase in parallel litigation between state and federal courts in an apparent effort to avoid the federal discovery stay or other provisions of the Act. This increase in state activity has the potential not only to undermine the intent of the Act, but to increase the overall cost of litigation to the extent that the Act encourages the filing of parallel claims.[4]

Prior to the passage of the Reform Act, there was essentially no significant securities class action litigation brought in State court.[5] In its Report to the President and the Congress on the First Year of Practice Under the Private Securities Litigation Reform Act of 1995, the SEC called the shift of securities fraud cases from Federal to State court "potentially the most significant development in securities litigation" since passage of the Reform Act.[6]

The managers also determined that, since passage of the Reform Act, plaintiffs' lawyers have sought to circumvent the Act's provisions by exploiting differences between Federal and State laws

---

[2] It is the intention of the managers that the suits under this exception be limited to the state in which issuer of the security is incorporated, in the case of a corporation, or state of organization, in the case of any other entity.

[3] Public Law 104–67 (December 22, 1995).

[4] Grundfest, Joseph A. & Perino, Michael A., *Securities Litigation Reform: The First Year's Experience: A Statistical and Legal Analysis of Class Action Securities Fraud Litigation under the Private Securities Litigation Reform Act of 1995*, Stanford Law School (February 27, 1997).

[5] *Id.* n. 18.

[6] *Report to the President and the Congress on the First Year of Practice Under the Private Securities Litigation Reform Act of 1995*, U.S. Securities and Exchange Commission, Office of the General Counsel, April 1997 at 61.

15

by filing frivolous and speculative lawsuits in State court, where essentially none of the Reform Act's procedural or substantive protections against abusive suits are available.[7] In California, State securities class action filings in the first six months of 1996 went up roughly five-fold compared to the first six months of 1995, prior to passage of the Reform Act.[8] Furthermore, as a state securities commissioner has observed:

> It is important to note that companies can not control where their securities are traded after an initial public offering. * * * As a result, companies with publicly-traded securities can not choose to avoid jurisdictions which present unreasonable litigation costs. Thus, a single state can impose the risks and costs of its pecular litigation system on all national issuers.[9]

The solution to this problem is to make Federal court the exclusive venue for most securities fraud class action litigation involving nationally traded securities.

SCIENTER

It is the clear understanding of the managers that Congress did not, in adopting the Reform Act, intend to alter the standards of liability under the Exchange Act.

The managers understand, however, that certain Federal district courts have interpreted the Reform Act as having altered the scienter requirement. In that regard, the managers again emphasize that the clear intent in 1995 and our continuing intent in this legislation is that neither the Reform Act nor S. 1260 in any way alters the scienter standard in Federal securities fraud suits.

Additionally, it was the intent of Congress, as was expressly stated during the legislative debate on the Reform Act, and particularly during the debate on overriding the President's veto, that the Reform Act establish a heightened uniform Federal standard on pleading requirements based upon the pleading standard applied by the Second Circuit Court of Appeals. Indeed, the express language of the Reform Act itself carefully provides that plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." The Managers emphasize that neither the Reform Act nor S. 1260 makes any attempt to define that state of mind.

The managers note that in *Ernst and Ernst* v. *Hochfelder*[10], the Supreme Court left open the question of whether conduct that was not intentional was sufficient for liability under the Federal securities laws. The Supreme Court has never answered that question. The Court expressly reserved the question of whether reckless behavior is sufficient for civil liability under section 10(b) and Rule

---

[7] Testimony of Mr. Jack G. Levin before the Subcommittee on Finance and Hazardous Materials of the Committee on Commerce, House of Representatives, Serial No. 105–85, at 41–45 (May 19, 1998).

[8] *Id.* at 4.

[9] Written statement of Hon. Keith Paul Bishop, Commissioner, California Department of Corporations, submitted to the Senate Committee on Banking, Housing and Urban Affairs' Subcommittee on Securities" "Oversight Hearing on the Private Securities Litigation Reform Act of 1995," Serial No. 105–182, at 3 (July 27, 1998).

[10] 425 U.S. 185 (1976).

16

10b–5 in a subsequent case, *Herman & Maclean* v. *Huddleston*[11], where it stated, "We have explicitly left open the question of whether recklessness satisfies the scienter requirement."

The managers note that since the passage of the Reform Act, a data base containing many of the complaints, responses and judicial decisions on securities class actions since enactment of the Reform Act has been established on the Internet. This data base, the Securities Class Action Clearinghouse, is an extremely useful source of information on securities class actions. It can be accessed on the world wide web at http://securities.stanford.edu. The managers urge other Federal courts to adopt rules, similar to those in effect in the Northern District of California, to facilitate maintenance of this and similar data bases.

TOM BLILEY,
M.G. OXLEY,
BILLY TAUZIN,
CHRIS COX,
RICK WHITE,
ANNA G. ESHOO,
*Managers on the Part of the House.*

ALFONSE D'AMATO,
PHIL GRAMM,
CHRIS DODD,
*Managers on the Part of the Senate.*

○

---

[11] 459 U.S. 375 (1983).