# EXHIBIT C

| 105TH CONGRESS<br>*2d Session* | } | HOUSE OF REPRESENTATIVES | { | REPORT<br>105–640 |
|---|---|---|---|---|

## SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998

---

JULY 21, 1998.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

---

Mr. BLILEY, from the Committee on Commerce,
submitted the following

# R E P O R T

together with

## DISSENTING AND ADDITIONAL DISSENTING VIEWS

[To accompany H.R. 1689]

[Including cost estimate of the Congressional Budget Office]

The Committee on Commerce, to whom was referred the bill (H.R. 1689) to amend the Securities Act of 1933 and the Securities Exchange Act of 1934 to limit the conduct of securities class actions under State law, and for other purposes, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

### CONTENTS

|  | Page |
|---|---|
| Amendment | 2 |
| Purpose and Summary | 8 |
| Background and Need for Legislation | 9 |
| Hearings | 11 |
| Committee Consideration | 12 |
| Rollcall Votes | 12 |
| Committee Oversight Findings | 12 |
| Committee on Government Reform and Oversight | 12 |
| New Budget Authority, Entitlement Authority, and Tax Expenditures | 13 |
| Committee Cost Estimate | 13 |
| Congressional Budget Office Estimate | 13 |
| Federal Mandates Statement | 15 |
| Advisory Committee Statement | 15 |
| Constitutional Authority Statement | 15 |
| Applicability to Legislative Branch | 15 |

59–006

7

eign securities markets, such expenses to include necessary logistic and administrative expenses and the expenses of Commission staff and foreign invitees in attendance at such consultations and meetings, including—

"(A) such incidental expenses as meals taken in the course of such attendance;

"(B) any travel or transportation to or from such meetings; and

"(C) any other related lodging or subsistence.".

# TITLE III—CLERICAL AND TECHNICAL AMENDMENTS

**SEC. 301. CLERICAL AND TECHNICAL AMENDMENTS.**

(a) SECURITIES ACT OF 1933.—The Securities Act of 1933 (15 U.S.C. 77 et seq.) is amended as follows:

(1) Section 2(a)(15)(i) (15 U.S.C. 77b(a)(15)(i)) is amended by striking "section 2(13) of the Act" and inserting "paragraph (13) of this subsection".

(2) Section 11(f)(2)(A) (15 U.S.C. 77k(f)(2)(A)) is amended by striking "section 38" and inserting "section 21D(f)".

(3) Section 13 (15 U.S.C. 77m) is amended—

(A) by striking "section 12(2)" each place it appears and inserting "section 12(a)(2)"; and

(B) by striking "section 12(1)" each place it appears and inserting "section 12(a)(1)".

(4) Section 18 (15 U.S.C. 77r) is amended—

(A) in subsection (b)(1)(A), by inserting ", or authorized for listing," after "Exchange, or listed";

(B) in subsection (c)(2)(B)(i), by striking "Capital Markets Efficiency Act of 1996" and inserting "National Securities Markets Improvement Act of 1996";

(C) in subsection (c)(2)(C)(i), by striking "Market" and inserting "Markets";

(D) in subsection (d)(1)(A)—

(i) by striking "section 2(10)" and inserting "section 2(a)(10)"; and

(ii) by striking "subparagraphs (A) and (B)" and inserting "subparagraphs (a) and (b)";

(E) in subsection (d)(2), by striking "Securities Amendments Act of 1996" and inserting "National Securities Markets Improvement Act of 1996"; and

(F) in subsection (d)(4), by striking "For purposes of this paragraph, the" and inserting "The".

(5) Sections 27, 27A, and 28 (15 U.S.C. 77z–1, 77z–2, 77z–3) are transferred to appear after section 26.

(6) Paragraph (28) of schedule A of such Act (15 U.S.C. 77aa(28)) is amended by striking "identic" and inserting "identical".

(b) SECURITIES EXCHANGE ACT OF 1934.—The Securities Exchange Act of 1934 (15 U.S.C. 78 et seq.) is amended as follows:

(1) Section 3(a)(10) (15 U.S.C. 78c(a)(10)) is amended by striking "deposit, for" and inserting "deposit for".

(2) Section 3(a)(12)(A) (15 U.S.C. 78c(a)(12)(A)) is amended by moving clause (vi) two em spaces to the left.

(3) Section 3(a)(22)(A) (15 U.S.C. 78c(a)(22)(A)) is amended—

(A) by striking "section 3(h)" and inserting "section 3"; and

(B) by striking "section 3(t)" and inserting "such section 3".

(4) Section 3(a)(39)(B)(i) (15 U.S.C. 78c(a)(39)(B)(i)) is amended by striking "an order to the Commission" and inserting "an order of the Commission".

(5) The following sections are each amended by striking "Federal Reserve Board" and inserting "Board of Governors of the Federal Reserve System": subsections (a) and (b) of section 7 (15 U.S.C. 78g(a), (b)); section 17(g) (15 U.S.C. 78q(g)); and section 26 (15 U.S.C. 78z).

(6) The heading of subsection (d) of section 7 (15 U.S.C. 78g(d)) is amended by striking "EXCEPTION" and inserting "EXCEPTIONS".

(7) Section 14(g)(4) (15 U.S.C. 78n(g)(4)) is amended by striking "consolidation sale," and inserting "consolidation, sale,".

(8) Section 15 (15 U.S.C. 78o) is amended—

(A) in subsection (c), by moving paragraph (8) two em spaces to the left;

(B) in subsection (h)(2), by striking "affecting" and inserting "effecting";

(C) in subsection (h)(3)(A)(i)(II)(bb), by inserting "or" after the semicolon;

8

    (D) in subsection (h)(3)(A)(ii)(I), by striking "maintains" and inserting "maintained";

    (E) in subsection (h)(3)(B)(ii), by striking "association" and inserting "associated".

  (9) Section 15B(c)(4) (15 U.S.C. 78o–4(c)(4)) is amended by striking "convicted by any offense" and inserting "convicted of any offense".

  (10) Section 15C(f)(5) (15 U.S.C. 78o–5(f)(5)) is amended by striking "any person or class of persons" and inserting "any person or class of persons".

  (11) Section 19(c) (15 U.S.C. 78s(c)) is amended by moving paragraph (5) two em spaces to the right.

  (12) Section 20 (15 U.S.C. 78t) is amended by redesignating subsection (f) as subsection (e).

  (13) Section 21D (15 U.S.C. 78u–4) is amended—

    (A) by redesignating subsection (g) as subsection (f); and

    (B) in paragraph (2)(B)(i) of such subsection, by striking "paragraph (1)" and inserting "subparagraph (A)".

  (14) Section 31(a) (15 U.S.C. 78ee(a)) is amended by striking "this subsection" and inserting "this section".

(c) INVESTMENT COMPANY ACT OF 1940.—The Investment Company Act of 1940 (15 U.S.C. 80a–1 et seq.) is amended as follows:

  (1) Section 2(a)(8) (15 U.S.C. 80a–2(a)(8)) is amended by striking "Unitde" and inserting "United".

  (2) Section 3(b) (15 U.S.C. 80a–3(b)) is amended by striking "paragraph (3) of subsection (a)" and inserting "paragraph (1)(C) of subsection (a)".

  (3) Section 12(d)(1)(G)(i)(III)(bb) (15 U.S.C. 80a–12(d)(1)(G)(i)(III)(bb)), by striking "the acquired fund" and inserting "the acquired company".

  (4) Section 18(e)(2) (15 U.S.C. 80a–18(e)(2)) is amended by striking "subsection (e)(2)" and inserting "paragraph (1) of this subsection".

  (5) Section 30 (15 U.S.C. 80a–29) is amended—

    (A) by inserting "and" after the semicolon at the end of subsection (b)(1);

    (B) in subsection (e), by striking "semi-annually" and inserting "semi-annually"; and

    (C) by redesignating subsections (g) and (h) as added by section 508(g) of the National Securities Markets Improvement Act of 1996 as subsections (i) and (j), respectively.

  (6) Section 31(f) (15 U.S.C. 80a–30(f)) is amended by striking "subsection (c)" and inserting "subsection (e)".

(d) INVESTMENT ADVISERS ACT OF 1940.—The Investment Advisers Act of 1940 (15 U.S.C. 80b et seq.) is amended as follows:

  (1) Section 203(e)(8)(B) (15 U.S.C. 80b–3(e)(8)(B)) is amended by inserting "or" after the semicolon.

  (2) Section 222(b)(2) of (15 U.S.C. 80b–18a(b)(2)) is amended by striking "principle" and inserting "principal".

(e) TRUST INDENTURE ACT OF 1939.—The Trust Indenture Act of 1939 (15 U.S.C. 77aaa et seq.) is amended as follows:

  (1) Section 303 (15 U.S.C. 77ccc) is amended by striking "section 2" each place it appears in paragraphs (2) and (3) and inserting "section 2(a)".

  (2) Section 304(a)(4)(A) (15 U.S.C. 77ddd(a)(4)(A)) is amended by striking "(14) of subsection" and inserting "(13) of section".

  (3) Section 313(a) (15 U.S.C. 77mmm(a)) is amended—

    (A) by inserting "any change to" after the paragraph designation at the beginning of paragraph (4); and

    (B) by striking "any change to" in paragraph (6).

  (4) Section 319(b) (15 U.S.C. 77sss(b)) is amended by striking "the Federal Register Act" and inserting "chapter 15 of title 44, United States Code,".

**SEC. 302. EXEMPTION OF SECURITIES ISSUED IN CONNECTION WITH CERTAIN STATE HEARINGS.**

  Section 18(b)(4)(C) of the Securities Act of 1933 (15 U.S.C. 77r(b)(4)(C)) is amended by striking "paragraph (4) or (11)" and inserting "paragraph (4), (10), or (11)".

## PURPOSE AND SUMMARY

  Title I of H.R. 1689, the Securities Litigation Uniform Standards Act of 1998, makes Federal court the exclusive venue for most securities class action lawsuits. The purpose of this title is to prevent plaintiffs from seeking to evade the protections that Federal law

9

provides against abusive litigation by filing suit in State, rather than in Federal, court. The legislation is designed to protect the interests of shareholders and employees of public companies that are the target of meritless "strike" suits, the purpose of which is to extract a sizeable settlement from companies that are economically forced to settle, regardless of the lack of merits of the suit, simply to avoid the potentially bankrupting expense of litigating.

Additionally, consistent with the determination that Congress made in the National Securities Markets Improvement Act [1] (NSMIA), this legislation establishes uniform national rules for securities class action litigation involving our national capital markets. Under the legislation, class actions relating to a "covered security" (as defined by section 18(b)(1) of the Securities Act of 1933 which was added to that Act by NSMIA) alleging fraud or manipulation must be maintained pursuant to the provisions of Federal securities law, in Federal court (subject to certain exceptions).

"Class actions" that the legislation bars from State court include actions brought on behalf of more than 50 persons, actions brought on behalf of one or more unnamed parties, and so-called "mass actions," in which a group of lawsuits filed in the same court are joined or otherwise proceed as a single action.

The legislation provides for certain exceptions for specific types of actions. The legislation preserves State jurisdiction over: (1) certain actions that are based upon the law of the State in which the issuer of the security in question is incorporated; (2) actions brought by States and political subdivisions, and State pension plans, so long as the plaintiffs are named and have authorized participation in the action; and (3) actions by a party to a contractual agreement (such as an indenture trustee) seeking to enforce provisions of the indenture.

Additionally, the legislation provides for an exception from the definition of "class action" for certain shareholder derivative actions.

Title II of the legislation reauthorizes the Securities and Exchange Commission (SEC or Commission) for Fiscal Year 1999. This title is substantially consistent with H.R. 1262, the Securities and Exchange Commission Reauthorization Act of 1997, which passed the House on November 13, 1997.

Title III of the legislation provides for corrections to certain clerical and technical errors in the Federal securities laws arising from changes made by the Private Securities Litigation Reform Act of 1995 [2] (the "Reform Act") and NSMIA.

## BACKGROUND AND NEED FOR LEGISLATION

The 104th Congress passed, over President Clinton's veto, the Reform Act, which was designed to put an end to vexatious litigation that was draining value from the shareholders and employees of public companies. The Subcommittee on Finance and Hazardous Materials held an oversight hearing to review the implementation of the Reform Act on October 21, 1997. During this hearing, wit-

[1] Public Law 104–290 (October 11, 1996).
[2] Public Law 104–67 (December 22, 1995).

10

nesses testified that there had been a noticeable shift in class action litigation from Federal to State courts.[3]

A report and statistical analysis of securities class actions lawsuits authored by Joseph A. Grundfest and Michael A. Perino reached the following conclusion:

> The evidence presented in this report suggests that the level of class action securities fraud litigation has declined by about a third in federal courts, but that there has been an almost equal increase in the level of state court activity, largely as a result of a "substitution effect" whereby plaintiffs resort to state court to avoid the new, more stringent requirements of federal cases. There has also been an increase in parallel litigation between state and federal courts in an apparent effort to avoid the federal discovery stay or other provisions of the Act. This increase in state activity has the potential not only to undermine the intent of the Act, but to increase the overall cost of litigation to the extent that the Act encourages the filing of parallel claims.[4]

Prior to the passage of the Reform Act, there was essentially no significant securities class action litigation brought in State court.[5] In its Report to the President and the Congress on the First Year of Practice Under the Private Securities Litigation Reform Act of 1995, the SEC called the shift of securities fraud cases from Federal to State court "potentially the most significant development in securities litigation" since passage of the Reform Act.[6]

The Subcommittee also heard testimony during a legislative hearing on H.R. 1689 that, since passage of the Reform Act, plaintiffs' lawyers have sought to circumvent the Act's provisions by exploiting differences between Federal and State laws by filing frivolous and speculative lawsuits in State court, where essentially none of the Reform Act's procedural or substantive protections against abusive suits are available.[7] In California, State securities class action filings in the first six months of 1996 went up roughly fivefold compared to the first six months of 1995, prior to passage of the Reform Act.[8]

The solution to this problem is to make Federal court the exclusive venue for securities fraud class action litigation.

The Subcommittee heard testimony that the migration to State court was fueled by a desire to circumvent the more stringent re-

---

[3] Testimony of Mr. David L. Anderson before the Subcommittee on Finance and Hazardous Materials of the Committee on Commerce, Serial No. 105–85, at 47 (May 19, 1998). "It is the conclusion of many of us practicing in this area that many state court lawsuits are being brought for improper purposes. . . . The plaintiffs' bar largely ignored the state courts until the passage of the Reform Act. . . . [W]hat they are trying to do is end-run the Reform Act in the state courts. Directing securities class actions cases back to the Federal courts is the only way to eliminate that end run."
[4] Grundfest, Joseph A. & Perino, Michael A., "Securities Litigation Reform: The First Year's Experience: A Statistical and Legal Analysis of Class Action Securities Fraud Litigation under the Private Securities Litigation Reform Act of 1995," Stanford Law School (February 27, 1997).
[5] Id. n.18.
[6] "Report to the President and the Congress on the First Year of Practice Under the Private Securities Litigation Reform Act of 1995," U.S. Securities and Exchange Commission, Office of the General Counsel, April 1997 at 61.
[7] Testimony of Mr. Jack G. Levin before the Subcommittee on Finance and Hazardous Materials of the Committee on Commerce, Serial No. 105–85, at 41–45 (May 19, 1998).
[8] Id. at 4.

11

quirements of the heightened pleading standard adopted under the Reform Act.[9] The Committee addresses this problem in two ways. First, it preempts securities fraud class actions brought under State law. Second, it grants power to Federal judges to quash discovery in State actions if that discovery conflicts with an order of the Federal court. The purpose of this grant of authority is to give Federal judges tools to combat abuse of discovery proceedings in individual actions that may be brought in State court.

The Committee notes that since the passage of the Reform Act, a data base containing many of the complaints, responses and judicial decisions on securities class actions since enactment of the Reform Act has been established on the Internet. This data base, the Securities Class Action Clearinghouse, is an extremely useful source of information on securities class actions. It can be accessed on the world wide web at *http://securities.stanford.edu*. The Committee urges other Federal courts to adopt rules, similar to those in effect in the Northern District of California, to facilitate maintenance of this and similar data bases.

The Committee heard testimony from opponents of the legislation, such as Ms. Mary Rouleau of the Consumer Federation of America (CFA), who testified that the bill was premature, unwarranted based on available evidence, harmful to investors, and overly broad in its proposed preemption of State law. The Committee believes that the overwhelming weight of the evidence available to it supports going forward with this bill at this time for the reasons previously noted. Moreover, the Committee adopted a number of changes to the introduced bill to address the substantive concerns raised in some of the dissenting testimony. These changes reflect and improve upon the companion Senate-passed bill that was approved by that body on May 13, 1998 by a vote of 79 yeas to 21 nays.

## HEARINGS

On October 21, 1997, the Subcommittee on Finance and Hazardous Material held an oversight hearing on the Implementation of the Private Securities Litigation Reform Act of 1995. The Committee received testimony from the following witnesses: the Honorable Arthur Levitt, Jr., Chairman, Securities and Exchange Commission, accompanied by Mr. Richard H. Walker, General Counsel, Securities and Exchange Commission; Mr. Michael A. Perino, Stanford University School of Law; Mr. Bruce G. Vanyo, Wilson, Sonsini, Goodrich, and Rosati; Mr. Robert V. Stout, Controller, City of Stamford, Connecticut, on behalf of the Government Finance Officers' Association; and Mr. Leonard B. Simon, Milberg Weiss Bershad Hynes & Lerach, L.L.P.

---

[9] Testimony of Mr. David L. Anderson before the Subcommittee on Finance and Hazardous Materials of the Committee on Commerce, Serial No. 105–85, at 46–50 (May 19, 1998). Additionally, one study, by Price Waterhouse LLP, found that the average number of parallel and "federal equivalent" securities class actions filed in state court 1996 grew 355% over the 1991–1995 average. Although there was a drop in the number of these state court filings in 1997, the number of state cases that year nonetheless was 150% higher than the 1991–1995 average. Letter to The Honorable Michael G. Oxley and The Honorable Thomas J. Manton from Daniel V. Dooley, Partner, Price Waterhouse LLP, Regarding the Price Waterhouse LLP Securities Litigation Study and Addendum on State "Parallel" and State "Federal-Equivalent" Securities Litigation Cases at 6 (June 2, 1998).

12

The Subcommittee held a legislative hearing on H.R. 1689, the Securities Litigation Uniform Standards Act, on May 19, 1998. The Subcommittee received testimony from: the Honorable Tom Campbell, U.S. Representative, Fifteenth District, State of California; the Honorable Anna G. Eshoo, U.S. Representative, Fourteenth District, State of California; the Honorable Arthur Levitt, Jr., Chairman, Securities and Exchange Commission; Mr. Jack G. Levin, Director of Legal and Regulatory Affairs, NationsBanc Montgomery Securities; Mr. David L. Anderson, Senior Counsel, Pillsbury, Madison & Sutro; Mr. Jack Coffee, Professor, Columbia University Law School; Mr. Robert C. Hinkley, General Counsel, Xilinx, Inc.; Mr. Richard W. Painter, Professor, Cornell University Law School; Mr. John F. Olson, Gibson, Dunn & Crutcher, LLP; Mr. Blake Campbell, Assistant Commissioner, Securities Regulation Division, Department of Corporations, State of California accompanied by Mr. Peter Kezirian, General Counsel; and Ms. Mary Rouleau, Legislative Director, Consumer Federation of America.

COMMITTEE CONSIDERATION

On June 10, 1998, the Subcommittee on Finance and Hazardous Materials met in open markup session and approved H.R. 1689, the Securities Litigation Uniform Standards Act of 1998, for Full Committee consideration, amended, by a rollcall vote of 21 yeas to 4 nays. On June 24, 1998, the Committee on Commerce met in open markup session and ordered H.R. 1689 reported to the House, amended, by a voice vote, a quorum being present.

ROLLCALL VOTES

Clause 2(l)(2)(B) of Rule XI of the Rules of the House requires the Committee to list the recorded votes on the motion to report legislation and amendments thereto. There were no recorded votes taken in connection with ordering H.R. 1689 reported. An Amendment in the Nature of a Substitute by Mr. Bliley was agreed to, amended, by a voice vote. An amendment to the Bliley Amendment in the Nature of a Substitute by Ms. DeGette to add a new section requiring the Securities and Exchange Commission to include an analysis of the impact and consequences of this legislation in each of its first three annual reports submitted after the date of enactment was agreed to by a voice vote. A motion by Mr. Bliley to order H.R. 1689 reported to the House, amended, was agreed to by a voice vote, a quorum being present.

COMMITTEE OVERSIGHT FINDINGS

Pursuant to clause 2(l)(3)(A) of Rule XI of the Rules of the House of Representatives, the Committee held legislative and oversight hearings and made findings that are reflected in this report.

COMMITTEE ON GOVERNMENT REFORM AND OVERSIGHT

Pursuant to clause 2(l)(3)(D) of Rule XI of the Rules of the House of Representatives, no oversight findings have been submitted to the Committee by the Committee on Government Reform and Oversight.