# EXHIBIT 4

10 of 11 DOCUMENTS

Copyright 1998 Congressional Information Service, Inc.
Committee Reports

105th Congress, 2nd Session

House Report 105-640

105 H. Rpt. 640

SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998

**DATE:** July 21, 1998. Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

**SPONSOR:** Mr. Bliley submitted the following together with DISSENTING AND ADDITIONAL DISSENTING VIEWS
(To accompany H.R. 1689)
(Including cost estimate of the Congressional Budget Office)

**COMMITTEE:** from the Committee on Commerce

R E P O R T

**TEXT:**

The Committee on Commerce, to whom was referred the bill (H.R. 1689) toamend the Securities Act of 1933 and the Securities Exchange Act of 1934 to limit the conduct of securities class actions under State law, and for other purposes, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

The amendment is as follows:

Strike out all after the enacting clause and insert in lieu thereof the following:

SECTION 1. SHORT TITLE.

This Act may be cited as the "Securities Litigation Uniform Standards Act of 1998". TITLE I SECURITIES LITIGATION UNIFORM STANDARDS

SEC. 101. LIMITATION ON REMEDIES.

(a) Amendments to the Securities Act of 1933.

(1) Amendment. Section 16 of the Securities Act of 1933 (15 U.S.C. 77p) is amended to read as follows:

"SEC. 16. ADDITIONAL REMEDIES; LIMITATION ON REMEDIES.

"(a) Remedies Additional. Except as provided in subsection (b), the rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity.

"(b) Class Action Limitations. No class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging

"(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

"(2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

"(c) Removal of Class Actions. Any class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b).

"(d) Preservation of Certain Actions.

"(1) Actions under state law of state of incorporation.

"(A) Actions preserved. Notwithstanding subsection (b) or (c), a class action described in subparagraph (B) of this paragraph that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity) may be maintained in a State or Federal court by a private party.

"(B) Permissible actions. A class action is described in this subparagraph if it involves

"(i) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or

"(ii) any recommendation, position, or other communication with respect to the sale of securities of the issuer that

"(I) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

"(II) concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters or appraisal rights.

"(2) State actions.

"(A) In general. Notwithstanding any other provision of this section, nothing in this section may be construed to preclude a State or political subdivision thereof or a State pension plan from bringing an action involving a covered security on its own behalf, or as a member of a class comprised solely of other States, political subdivisions, or State pension plans that are named plaintiffs, and that have authorized participation, in such action.

"(B) State pension plan defined. For purposes of this paragraph, the term state pension plan means a pension plan established and maintained for its employees by the government of the State or political subdivision thereof, or by any agency or instrumentality thereof.

"(3) Actions under contractual agreements between issuers and indenture trustees. Notwithstanding subsection (b) or (c), a class action that seeks to enforce a contractual agreement between an issuer and an indenture trustee may be maintained in a State or Federal court by a party to the agreement or a successor to such party.

"(4) Remand of removed actions. In an action that has been removed from a State court pursuant to subsection (c), if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court.

"(e) Preservation of State Jurisdiction. The securities commission (or any agency or office performing like functions) of any State shall retain jurisdiction under the laws of such State to investigate and bring enforcement actions.

"(f) Definitions. For purposes of this section, the following definitions shall apply:

"(1) Affiliate of the issuer. The term affiliate of the issuer means a person that directly or indirectly, through 1 or more intermediaries, controls or is controlled by or is under common control with, the issuer.

"(2) Class action.

"(A) In general. The term lass action means

"(i) any single lawsuit in which

"(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

"(II) 1 or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

"(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which

"(I) damages are sought on behalf of more than 50 persons; and

"(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

"(B) Exception for derivative actions. Notwithstanding subparagraph (A), the term lass action does not include an exclusively derivative action brought by 1 or more shareholders on behalf of a corporation.

"(C) Counting of certain class members. For purposes of this paragraph, a corporation, investment company, pension plan, partnership, or other entity, shall be treated as 1 person or prospective class member, but only if the entity is not established for the purpose of participating in the action.

"(D) Rule of construction. Nothing in this paragraph shall be construed to affect the discretion of a State court in determining whether actions filed in such court should be joined, consolidated, or otherwise allowed to proceed as a single action.

"(3) Covered security. The term covered security means a security that satisfies the standards for a covered security specified in section 18(b)(1) at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under this title pursuant to rules issued by the Commission under section 4(2) of this title.".

(2) Circumvention of stay of discovery. Section 27(b) of the Securities Act of 1933 (15 U.S.C. 77z-1(b)) is amended by inserting after paragraph (3) the following new paragraph:

"(4) Circumvention of stay of discovery. Upon a proper showing, a court may stay discovery proceedings in any private action in a State court as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this subsection.".

(3) Conforming amendments. Section 22(a) of the Securities Act of 1933 (15 U.S.C. 77v(a)) is amended

(A) by inserting "except as provided in section 16 with respect to class actions," after "Territorial courts,"; and

(B) by striking "No case" and inserting "Except as provided in section 16(c), no case".

(b) Amendments to the Securities Exchange Act of 1934.

(1) Amendment. Section 28 of the Securities Exchange Act of 1934 (15 U.S.C. 78bb) is amended

(A) in subsection (a), by striking "The rights and remedies" and inserting "Except as provided in subsection (f), the rights and remedies"; and

(B) by adding at the end the following new subsection:

"(f) Limitations on Remedies.

"(1) Class action limitations. No class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging

"(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

"(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

1998 Committee Reports, July 21, 1998

"(2) Removal of class actions. Any class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

"(3) Preservation of certain actions.

"(A) Actions under state law of state of incorporation.

"(i) Actions preserved. Notwithstanding paragraph (1) or (2), a class action described in clause (ii) of this subparagraph that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity) may be maintained in a State or Federal court by a private party.

"(ii) Permissible actions. A class action is described in this clause if it involves

"(I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or

"(II) any recommendation, position, or other communication with respect to the sale of securities of an issuer that

"(aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

"(bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters or appraisal rights.

"(B) State actions.

"(i) In general. Notwithstanding any other provision of this subsection, nothing in this subsection may be construed to preclude a State or political subdivision thereof or a State pension plan from bringing an action involving a covered security on its own behalf, or as a member of a class comprised solely of other States, political subdivisions, or State pension plans that are named plaintiffs, and that have authorized participation, in such action.

"(ii) State pension plan defined. For purposes of this subparagraph, the term state pension plan means a pension plan established and maintained for its employees by the government of a State or political subdivision thereof, or by any agency or instrumentality thereof.

"(C) Actions under contractual agreements between issuers and indenture trustees. Notwithstanding paragraph (1) or (2), a class action that seeks to enforce a contractual agreement between an issuer and an indenture trustee may be maintained in a State or Federal court by a party to the agreement or a successor to such party.

"(D) Remand of removed actions. In an action that has been removed from a State court pursuant to paragraph (2), if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court.

"(4) Preservation of state jurisdiction. The securities commission (or any agency or office performing like functions) of any State shall retain jurisdiction under the laws of such State to investigate and bring enforcement actions.

"(5) Definitions. For purposes of this subsection, the following definitions shall apply:

"(A) Affiliate of the issuer. The term affiliate of the issuer means a person that directly or indirectly, through 1 or more intermediaries, controls or is controlled by or is under common control with, the issuer.

"(B) Class action. The term lass action means

"(i) any single lawsuit in which

"(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

"(II) 1 or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

"(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which

"(I) damages are sought on behalf of more than 50 persons; and

"(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

"(C) Exception for derivative actions. Notwithstanding subparagraph (B), the term lass action does not include an exclusively derivative action brought by 1 or more shareholders on behalf of a corporation.

"(D) Counting of certain class members. For purposes of this paragraph, a corporation, investment company, pension plan, partnership, or other entity, shall be treated as 1 person or prospective class member, but only if the entity is not established for the purpose of participating in the action.

"(E) Covered security. The term covered security means a security that satisfies the standards for a covered security specified in section 18(b)(1) of the Securities Act of 1933, at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under the Securities Act of 1933 pursuant to rules issued by the Commission under section 4(2) of such Act.

"(F) Rule of construction. Nothing in this paragraph shall be construed to affect the discretion of a State court in determining whether actions filed in such court should be joined, consolidated, or otherwise allowed to proceed as a single action.".

(2) Circumvention of stay of discovery. Section 21D(b)(3) of the Securities Exchange Act of 1934 (15 U.S.C. 78u-4(b)(3)) is amended by inserting after subparagraph (C) the following new subparagraph:

"(D) Circumvention of stay of discovery. Upon a proper showing, a court may stay discovery proceedings in any private action in a State court as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this paragraph.".

(c) Applicability. The amendments made by this section shall not affect or apply to any action commenced before and pending on the date of enactment of this Act.

SEC. 102. ISSUANCE OF SUBPOENAS IN JUDICIAL ACTIONS.

(a) Securities Act. Section 22(a) of the Securities Act of 1933 (15 U.S.C. 77v(a)) is amended by inserting after the second sentence the following: "In any action or proceeding instituted by the Commission under this title in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other district.".

(b) Securities Exchange Act. Section 27 of the Securities Act of 1934 (15 U.S.C. 78aa) is amended by inserting after the third sentence the following: "In any action or proceeding instituted by the Commission under this title in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other district.".

(c) Investment Company Act. Section 44 of the Investment Company Act of 1940 (15 U.S.C. 80a-43) is amended by inserting after the fourth sentence the following: "In any action or proceeding instituted by the Commission under this title in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other district.".

(d) Investment Advisers Act. Section 214 of the Investment Advisers Act of 1940 (15 U.S.C. 80b-14) is amended by inserting after the third sentence the following: "In any action or proceeding instituted by the Commission under this title in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other district.".

(e) Public Utility Holding Company Act. Section 25 of the Public Utility Holding Company Act of 1935 (15 U.S.C. 79y) is amended by inserting after the third sentence the following: "In any action or proceeding instituted by the

Commission under this title in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other district.".

SEC. 103. PROMOTION OF RECIPROCAL SUBPOENA ENFORCEMENT.

(a) Commission Action. The Securities and Exchange Commission, in consultation with State securities commissions, shall seek to encourage the adoption of State laws providing for reciprocal enforcement by State securities commissions of subpoenas issued by another State securities commission seeking to compel persons to attend, testify in, or produce documents or records in connection with an action or investigation by a State securities commission of an alleged violation of State securities laws.

(b) Report. Within 24months after the date of enactment of this Act, the Commission shall submit a report to the Congress

(1) identifying the States that have adopted laws described in subsection (a);

(2) describing the actions undertaken by the Commission and State securities commissions to promote the adoption of such laws; and

(3) identifying any further actions the Commission recommends for such purposes.

SEC. 104. REPORT ON CONSEQUENCES.

The Securities and Exchange Commission shall include in each of its first 3 annual reports submitted after the date of enactment of this Act a report regarding

(1) the nature and the extent of the class action cases that are preempted by, or removed pursuant to, the amendments made by section 101 of this title;

(2) the extent to which that preemption or removal either promotes or adversely affects the protection of securities investors or the public interest; and

(3) if adverse effects are found, alternatives to, or revisions of, such preemption or removal that

(A) would not have such adverse effects;

(B) would further promote the protection of investors and the public interest; and

(C) would still substantially reduce the risk of abusive securities litigation.

TITLE II REAUTHORIZATION OF THE SECURITIES AND EXCHANGE COMMISSION

SEC. 201. AUTHORIZATION OF APPROPRIATIONS.

Section 35 of the Securities Exchange Act of 1934 (15 U.S.C. 78kk) is amended to read as follows:

"SEC. 35. AUTHORIZATION OF APPROPRIATIONS.

"(a) In General. In addition to any other funds authorized to be appropriated to the Commission, there are authorized to be appropriated to carry out the functions, powers, and duties of the Commission $351,280,000 for fiscal year 1999.

"(b) Miscellaneous Expenses. Funds appropriated pursuant to this section are authorized to be expended

"(1) not to exceed $3,000 per fiscal year, for official reception and representation expenses;

"(2) not to exceed $10,000 per fiscal year, for funding a permanent secretariat for the International Organization of Securities Commissions; and

"(3) not to exceed $100,000 per fiscal year, for expenses for consultations and meetings hosted by the Commission with foreign governmental and other regulatory officials, members of their delegations, appropriate representatives, and staff to exchange views concerning developments relating to securities matters, for development and implementation of cooperation agreements concerning securities matters and provision of technical assistance for the development of foreign securities markets, such expenses to include necessary logistic and administrative expenses and the expenses of Commission staff and foreign invitees in attendance at such consultations and meetings, including

"(A) such incidental expenses as meals taken in the course of such attendance;

"(B) any travel or transportation to or from such meetings; and

"(C) any other related lodging or subsistence.".

TITLE III CLERICAL AND TECHNICAL AMENDMENTS

SEC. 301. CLERICAL AND TECHNICAL AMENDMENTS.

(a) Securities Act of 1933. The Securities Act of 1933 (15 U.S.C. 77 et seq.) is amended as follows:

(1) Section 2(a)(15)(i) (15 U.S.C. 77b(a)(15)(i)) is amended by striking "section 2(13) of the Act" and inserting "paragraph (13) of this subsection".

(2) Section 11(f)(2)(A) (15 U.S.C. 77k(f)(2)(A)) is amended by striking "section 38" and inserting "section 21D(f)".

(3) Section 13 (15 U.S.C. 77m) is amended

(A) by striking "section 12(2)" each place it appears and inserting "section 12(a)(2)"; and

(B) by striking "section 12(1)" each place it appears and inserting "section 12(a)(1)".

(4) Section 18 (15 U.S.C. 77r) is amended

(A) in subsection (b)(1)(A), by inserting ", or authorized for listing," after "Exchange, or listed";

(B) in subsection (c)(2)(B)(i), by striking "Capital Markets Efficiency Act of 1996" and inserting "National Securities Markets Improvement Act of 1996";

(C) in subsection (c)(2)(C)(i), by striking "Market" and inserting "Markets";

(D) in subsection (d)(1)(A)

(i) by striking "section 2(10)" and inserting "section 2(a)(10)"; and

(ii) by striking "subparagraphs (A) and (B)" and inserting "subparagraphs (a) and (b)";

(E) in subsection (d)(2), by striking "Securities Amendments Act of 1996" and inserting "National Securities Markets Improvement Act of 1996"; and

(F) in subsection (d)(4), by striking "For purposes of this paragraph, the" and inserting "The".

(5) Sections 27, 27A, and 28 (15 U.S.C. 77z-1, 77z-2, 77z-3) are transferred to appear after section 26.

(6) Paragraph (28) of schedule A of such Act (15 U.S.C. 77aa(28)) is amended by striking "identic" and inserting "identical".

(b) Securities Exchange Act of 1934. The Securities Exchange Act of 1934 (15 U.S.C. 78 et seq.) is amended as follows:

(1) Section 3(a)(10) (15 U.S.C. 78c(a)(10)) is amended by striking "deposit, for" and inserting "deposit for".

(2) Section 3(a)(12)(A) (15 U.S.C. 78c(a)(12)(A)) is amended by moving clause (vi) two em spaces to the left.

(3) Section 3(a)(22)(A) (15 U.S.C. 78c(a)(22)(A)) is amended

(A) by striking "section 3(h)" and inserting "section 3"; and

(B) by striking "section 3(t)" and inserting "such section 3".

(4) Section 3(a)(39)(B)(i) (15 U.S.C. 78c(a)(39)(B)(i)) is amended by striking "an order to the Commission" and inserting "an order of the Commission".

(5) The following sections are each amended by striking "Federal Reserve Board" and inserting "Board of Governors of the Federal Reserve System": subsections (a) and (b) of section 7 (15 U.S.C. 78g(a), (b)); section 17(g) (15 U.S.C. 78q(g)); and section 26 (15 U.S.C. 78z).

(6) The heading of subsection (d) of section 7 (15 U.S.C. 78g(d)) is amended by striking "Exception" and inserting "Exceptions".

(7) Section 14(g)(4) (15 U.S.C. 78n(g)(4)) is amended by striking "consolidation sale," and inserting "consolidation, sale,".

(8) Section 15 (15 U.S.C. 78o) is amended

(A) in subsection (c), by moving paragraph (8) two em spaces to the left;

(B) in subsection (h)(2), by striking "affecting" and inserting "effecting";

(C) in subsection (h)(3)(A)(i)(II)(bb), by inserting "or" after the semicolon;

(D) in subsection (h)(3)(A)(ii)(I), by striking "maintains" and inserting "maintained";

(E) in subsection (h)(3)(B)(ii), by striking "association" and inserting "associated".

(9) Section 15B(c)(4) (15 U.S.C. 78o-4(c)(4)) is amended by striking "convicted by any offense" and inserting "convicted of any offense".

(10) Section 15C(f)(5) (15 U.S.C. 78o-5(f)(5)) is amended by striking "any person or class or persons" and inserting "any person or class of persons".

(11) Section 19(c) (15 U.S.C. 78s(c)) is amended by moving paragraph (5) two em spaces to the right.

(12) Section 20 (15 U.S.C. 78t) is amended by redesignating subsection (f) as subsection (e).

(13) Section 21D (15 U.S.C. 78u-4) is amended

(A) by redesignating subsection (g) as subsection (f); and

(B) in paragraph (2)(B)(i) of such subsection, by striking "paragraph (1)" and inserting "subparagraph (A)".

(14) Section 31(a) (15 U.S.C. 78ee(a)) is amended by striking "this subsection" and inserting "this section".

(c) Investment Company Act of 1940. The Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.) is amended as follows:

(1) Section 2(a)(8) (15 U.S.C. 80a-2(a)(8)) is amended by striking "Unitde" and inserting "United".

(2) Section 3(b) (15 U.S.C. 80a-3(b)) is amended by striking "paragraph (3) of subsection (a)" and inserting "paragraph (1)(C) of subsection (a)".

(3) Section 12(d)(1)(G)(i)(III)(bb) (15 U.S.C. 80a-12(d)(1)(G)(i)(III)(bb)), by striking "the acquired fund" and inserting "the acquired company".

(4) Section 18(e)(2) (15 U.S.C. 80a-18(e)(2)) is amended by striking "subsection (e)(2)" and inserting "paragraph (1) of this subsection".

(5) Section 30 (15 U.S.C. 80a-29) is amended

(A) by inserting "and" after the semicolon at the end of subsection (b)(1);

(B) in subsection (e), by striking "semi-annually" and inserting "semiannually"; and

(C) by redesignating subsections (g) and (h) as added by section 508(g) of the National Securities Markets Improvement Act of 1996 as subsections (i) and (j), respectively.

(6) Section 31(f) (15 U.S.C. 80a-30(f)) is amended by striking "subsection (c)" and inserting "subsection (e)".

(d) Investment Advisers Act of 1940. The Investment Advisers Act of 1940 (15 U.S.C. 80b et seq.) is amended as follows:

(1) Section 203(e)(8)(B) (15 U.S.C. 80b-3(e)(8)(B)) is amended by inserting "or" after the semicolon.

(2) Section 222(b)(2) of (15 U.S.C. 80b-18a(b)(2)) is amended by striking "principle" and inserting "principal".

(e) Trust Indenture Act of 1939. The Trust Indenture Act of 1939 (15 U.S.C. 77aaa et seq.) is amended as follows:

(1) Section 303 (15 U.S.C. 77ccc) is amended by striking "section 2" each place it appears in paragraphs (2) and (3) and inserting "section 2(a)".

(2) Section 304(a)(4)(A) (15 U.S.C. 77ddd(a)(4)(A)) is amended by striking "(14) of subsection" and inserting "(13) of section".

(3) Section 313(a) (15 U.S.C. 77mmm(a)) is amended

(A) by inserting "any change to" after the paragraph designation at the beginning of paragraph (4); and

(B) by striking "any change to" in paragraph (6).

(4) Section 319(b) (15 U.S.C. 77sss(b)) is amended by striking "the Federal Register Act" and inserting "chapter 15 of title 44, United States Code,".

SEC. 302. EXEMPTION OF SECURITIES ISSUED IN CONNECTION WITH CERTAIN STATE HEARINGS.

Section 18(b)(4)(C) of the Securities Act of 1933 (15 U.S.C. 77r(b)(4)(C)) is amended by striking "paragraph (4) or (11)" and inserting "paragraph (4), (10), or (11)".

Purpose and Summary

Title I of H.R. 1689, the Securities Litigation Uniform Standards Act of 1998, makes Federal court the exclusive venue for most securities class action lawsuits. The purpose of this title is to prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than in Federal, court. The legislation is designed to protect the interests of shareholders and employees of public companies that are the target of meritless "strike" suits, the purpose of which is to extract a sizeable settlement from companies that are economically forced to settle, regardless of the lack of merits of the suit, simply to avoid the potentially bankrupting expense of litigating.

Additionally, consistent with the determination that Congress made in the National Securities Markets Improvement Act

> 1 (NSMIA), this legislation establishes uniform national rules for securities class action litigation involving our national capital markets. Under the legislation, class actions relating to a "covered security" (as defined by section 18(b)(1) of the Securities Act of 1933 which was added to that Act by NSMIA) alleging fraud or manipulation must be maintained pursuant to the provisions of Federal securities law, in Federal court (subject to certain exceptions).

1Public Law 104-290 (October 11, 1996).

"Class actions" that the legislation bars from State court include actions brought on behalf of more than 50 persons, actions brought on behalf of one or more unnamed parties, and so-called "mass actions," in which a group of lawsuits filed in the same court are joined or otherwise proceed as a single action.

The legislation provides for certain exceptions for specific types of actions. The legislation preserves State jurisdiction over: (1) certain actions that are based upon the law of the State in which the issuer of the security in question is incorporated; (2) actions brought by States and political subdivisions, and State pension plans, so long as the plaintiffs are named and have authorized participation in the action; and (3) actions by a party to a contractual agreement (such as an indenture trustee) seeking to enforce provisions of the indenture.

Additionally, the legislation provides for an exception from the definition of "class action" for certain shareholder derivative actions.

Title II of the legislation reauthorizes the Securities and Exchange Commission (SEC or Commission) for Fiscal Year 1999. This title is substantially consistent with H.R. 1262, the Securities and Exchange Commission Reauthorization Act of 1997, which passed the House on November 13, 1997.

Title III of the legislation provides for corrections to certain clerical and technical errors in the Federal securities laws arising from changes made by the Private Securities Litigation Reform Act of 1995

1998 Committee Reports, July 21, 1998

2 (the "Reform Act") and NSMIA.

2Public Law 104-67 (December 22, 1995).

Background and Need for Legislation

The 104th Congress passed, over President Clintons veto, the Reform Act, which was designed to put an end to vexatious litigation that was draining value from the shareholders and employees of public companies. The Subcommittee on Finance and Hazardous Materials held an oversight hearing to review the implementation of the Reform Act on October 21, 1997. During this hearing, witnesses testified that there had been a noticeable shift in class action litigation from Federal to State courts.

33Testimony of Mr. David L. Anderson before the Subcommittee on Finance and Hazardous Materials of the Committee on Commerce, Serial No. 105-85, at 47 (May 19, 1998). "It is the conclusion of many of us practicing in this area that many state court lawsuits are being brought for improper purposes. . . . The plaintiffs bar largely ignored the state courts until the passage of the Reform Act. . . . (W)hat they are trying to do is end-run the Reform Act in the state courts. Directing securities class actions cases back to the Federal courts is the only way to eliminate that end run."

A report and statistical analysis of securities class actions lawsuits authored by Joseph A. Grundfest and Michael A. Perino reached the following conclusion:

The evidence presented in this report suggests that the level of class action securities fraud litigation has declined by about a third in federal courts, but that there has been an almost equal increase in the level of state court activity, largely as a result of a "substitution effect" whereby plaintiffs resort to state court to avoid the new, more stringent requirements of federal cases. There has also been an increase in parallel litigation between state and federal courts in an apparent effort to avoid the federal discovery stay or other provisions of the Act. This increase in state activity has the potential not only to undermine the intent of the Act, but to increase the overall cost of litigation to the extent that the Act encourages the filing of parallel claims.

Grundfest, Joseph A. & Perino, Michael A., "Securities Litigation Reform: The First Years Experience: A Statistical and Legal Analysis of Class Action Securities Fraud Litigation under the Private Securities Litigation Reform Act of 1995," Stanford Law School (February 27, 1997).

Prior to the passage of the Reform Act, there was essentially no significant securities class action litigation brought in State court. In its Report to the President and the Congress on the First Year of Practice Under the Private Securities Litigation Reform Act of 1995, the SEC called the shift of securities fraud cases from Federal to State court "potentially the most significant development in securities litigation" since passage of the Reform Act.

Id. n.18.

"Report to the President and the Congress on the First Year of Practice Under the Private Securities Litigation Reform Act of 1995," U.S. Securities and Exchange Commission, Office of the General Counsel, April 1997 at 61.

The Subcommittee also heard testimony during a legislative hearing on H.R. 1689, that, since passage of the Reform Act, plaintiffs lawyers have sought to circumvent the Acts provisions by exploiting differences between Federal and State laws by filing frivolous and speculative lawsuits in State court, where essentially none of the Reform Acts procedural or substantive protections against abusive suits are available. In California, State securities class action filings in the first six months of 1996 went up roughly five-fold compared to the first six months of 1995, prior to passage of the Reform Act.

Testimony of Mr. Jack G. Levin before the Subcommittee on Finance and Hazardous Materials of the Committee on Commerce, Serial No. 105-85, at 41-45 (May 19, 1998).

Id. at 4.

The solution to this problem is to make Federal court the exclusive venue for securities fraud class action litigation.

The Subcommittee heard testimony that the migration to State court was fueled by a desire to circumvent the more stringent requirements of the heightened pleading standard adopted under the Reform Act. The Committee addresses this problem in two ways. First, it preempts securities fraud class actions brought under State law. Second, it grants power to Federal judges to quash discovery in State actions if that discovery conflicts with an order of the Federal court. The purpose of this grant of authority is to give Federal judges tools to combat abuse of discovery proceedings in individual actions that may be brought in State court.

Testimony of Mr. David L. Anderson before the Subcommittee on Finance and Hazardous Materials of the Committee on Commerce, Serial No. 105-85, at 46-50 (May 19, 1998). Additionally, one study, by Price Waterhouse LLP, found that the average number of parallel and "federal equivalent" securities class actions filed in state court 1996 grew 355% over the 1991-1995 average. Although there was a drop in the number of these state court filings in 1997, the number of state cases that year nonetheless was 150% higher than the 1991-1995 average. Letter to The Honorable Michael G. Oxley and The Honorable Thomas J. Manton from Daniel V. Dooley, Partner, Price Waterhouse LLP, Regarding the Price Waterhouse LLP Securities Litigation Study and Addendum on State "Parallel" and State "Federal-Equivalent" Securities Litigation Cases at 6 (June 2, 1998).

The Committee notes that since the passage of the Reform Act, a data base containing many of the complaints, responses and judicial decisions on securities class actions since enactment of the Reform Act has been established on the Internet. This data base, the Securities Class Action Clearinghouse, is an extremely useful source of information on securities class actions. It can be accessed on the world wide web at http://securities.stanford.edu.The Committee urges other Federal courts to adopt rules, similar to those in effect in the Northern District of California, to facilitate maintenance of this and similar data bases.

The Committee heard testimony from opponents of the legislation, such as Ms. Mary Rouleau of the Consumer Federation of America (CFA), who testified that the bill was premature, unwarranted based on available evidence, harmful to investors, and overly broad in its proposed preemption of State law. The Committee believes that the overwhelming weight of the evidence available to it supports going forward with this bill at this time for the reasons previously noted. Moreover, the Committee adopted a number of changes to the introduced bill to address the substantive concerns raised in some of the dissenting testimony. These changes reflect and improve upon the companion Senate-passed bill that was approved by that body on May 13, 1998 by a vote of 79 yeas to 21 nays.

Hearings

On October 21, 1997, the Subcommittee on Finance and Hazardous Material held an oversight hearing on the Implementation of the Private Securities Litigation Reform Act of 1995. The Committee received testimony from the following witnesses: the Honorable Arthur Levitt, Jr., Chairman, Securities and Exchange Commission, accompanied by Mr. Richard H. Walker, General Counsel, Securities and Exchange Commission; Mr. Michael A. Perino, Stanford University School of Law; Mr. Bruce G. Vanyo, Wilson, Sonsini, Goodrich, and Rosati; Mr. Robert V. Stout, Controller, City of Stamford, Connecticut, on behalf of the Government Finance Officers Association; and Mr. Leonard B. Simon, Milberg Weiss Bershad Hynes & Lerach, L.L.P.

The Subcommittee held a legislative hearing on H.R. 1689, the Securities Litigation Uniform Standards Act, on May 19, 1998. The Subcommittee received testimony from: the Honorable Tom Campbell, U.S. Representative, Fifteenth District, State of California; the Honorable Anna G. Eshoo, U.S. Representative, Fourteenth District, State of California; the Honorable Arthur Levitt, Jr., Chairman, Securities and Exchange Commission; Mr. Jack G. Levin, Director of Legal and Regulatory Affairs, NationsBanc Montgomery Securities; Mr. David L. Anderson, Senior Counsel, Pillsbury, Madison & Sutro; Mr. Jack Coffee, Professor, Columbia University Law School; Mr. Robert C. Hinkley, General Counsel, Xilinx, Inc.; Mr. Richard W. Painter, Professor, Cornell University Law School; Mr. John F. Olson, Gibson, Dunn & Crutcher, LLP; Mr. Blake Campbell, Assistant Commissioner, Securities Regulation Division, Department of Corporations, State of California accompanied by Mr. Peter Kezirian, General Counsel; and Ms. Mary Rouleau, Legislative Director, Consumer Federation of America.

Committee Consideration

On June 10, 1998, the Subcommittee on Finance and Hazardous Materials met in open markup session and approved H.R. 1689, the Securities Litigation Uniform Standards Act of 1998, for Full Committee consideration,

amended, by a rollcall vote of 21 yeas to 4 nays. On June 24, 1998, the Committee on Commerce met in open markup session and ordered H.R. 1689 reported to the House, amended, by a voice vote, a quorum being present.

Rollcall Votes

Clause 2(l)(2)(B) of Rule XI of the Rules of the House requires the Committee to list the recorded votes on the motion to report legislation and amendments thereto. There were no recorded votes taken in connection with ordering H.R. 1689 reported. An Amendment in the Nature of a Substitute by Mr. Bliley was agreed to, amended, by a voice vote. An amendment to the Bliley Amendment in the Nature of a Substitute by Ms. DeGette to add a new section requiring the Securities and Exchange Commission to include an analysis of the impact and consequences of this legislation in each of its first three annual reports submitted after the date of enactment was agreed to by a voice vote. A motion by Mr. Bliley to order H.R. 1689 reported to the House, amended, was agreed to by a voice vote, a quorum being present.

Committee Oversight Findings

Pursuant to clause 2(l)(3)(A) of Rule XI of the Rules of the House of Representatives, the Committee held legislative and oversight hearings and made findings that are reflected in this report.

Committee on Government Reform and Oversight

Pursuant to clause 2(l)(3)(D) of Rule XI of the Rules of the House of Representatives, no oversight findings have been submitted to the Committee by the Committee on Government Reform and Oversight.

New Budget Authority, Entitlement Authority, and Tax Expenditures

In compliance with clause 2(l)(3)(B) of Rule XI of the Rules of the House of Representatives, the Committee finds that H.R. 1689, the Securities Litigation Uniform Standards Act of 1998, would result in no new or increased budget authority, entitlement authority, or tax expenditures or revenues.

Committee Cost Estimate

The Committee adopts as its own the cost estimate prepared by the Director of the Congressional Budget Office pursuant to section 402 of the Congressional Budget Act of 1974.

Congressional Budget Office Estimate

Pursuant to clause 2(l)(3)(C) of Rule XI of the Rules of the House of Representatives, the following is the cost estimate provided by the Congressional Budget Office pursuant to section 402 of the Congressional Budget Act of 1974: U.S. Congress, Congressional Budget Office, Washington, DC, July 6, 1998. Hon. Tom Bliley, Chairman, Committee on Commerce, House of Representatives, Washington, DC.

Dear Mr. Chairman: he Congressional Budget Office has prepared the enclosed cost estimate for H.R. 1689, the Securities Litigation Uniform Standards Act of 1998.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is Mark Hadley.

Sincerely, James L. Blum For June E. ONeill, Director).

Enclosure. H.R. 1689 Securities Litigation Uniform Standards Act of 1998

Summary: H.R. 1689 would amend existing law related to class actions involving most types of securities fraud, reauthorize appropriations for the Securities and Exchange Commission (SEC), and require the SEC to study class actions involving securities fraud and state laws related to reciprocal enforcement of subpoenas. Under this bill, certain class actions could not be based on state law and could only be maintained in federal courts. H.R. 1689 would authorize the appropriation of $351 million for the Securities and Exchange Commission in fiscal year 1999. Assuming appropriation of the authorized amounts, CBO estimates that implementing H.R. 1689 would result in additional SEC spending of $347 million over fiscal years 1999 and 2000, but that the agency would collect $375 million in fees in 1999 to more than offset that new spending.

1998 Committee Reports, July 21, 1998

H.R. 1689 would not affect direct spending or receipts; therefore, pay-as-you go procedures would not apply. H.R. 1689 contains an intergovernmental mandate as defined in the Unfunded Mandates Reform Act (UMRA), because it would preempt state securities laws in order to prohibit most securities-related class-action suits from being adjudicated in state courts. The bill would allow state and local government pension plans to continue to sue at the state level, however. CBO estimates that the budgetary impact on states to comply with this mandate would not be significant. The bill would impose no new private-sector mandates as defined in UMRA.

Estimated cost to the Federal Government: For the purposes of this estimate, CBO assumes that H.R. 1689 will be enacted by the end of fiscal year 1998, and that the authorized amount will be appropriated by the start of fiscal year 1999. The estimated budgetary impact of H.R. 1689 is shown in the following table. Outlays have been estimated on the basis of historical spending patterns for SEC. The costs of this legislation fall within budget function 370 (commerce and housing credit).

Basis of estimate: Title I of H.R. 1689 would amend existing law so that class actions involving most types of securities fraud could not be based on state law and could only be maintained in federal courts. CBO estimates that implementing Title I would have no significant impact on the federal budget. Recent data on the number of securities-related class actions brought under state law suggest that fewer than 100 cases per year might shift to federal courts as a result of this bill. Although class actions often involve complex and time-consuming issues, CBO estimates that the federal court system would not incur significant costs to process that number of new cases.

Title II would authorize the appropriation of $351 million for the SEC to carry out its functions, powers, and duties in fiscal year 1999. Assuming appropriation of the authorized amount, CBO estimates that the SEC would spend an additional $347 million over the next two years. The agencys appropriations are offset by collections of fees on certain securities transactions. CBO estimates that the amount of fees to be credited to appropriations will total $375 million in 1999. H.R. 1689 also would require the SEC to submit a report within two years after the date of enactment, describing its efforts to promote state laws related to reciprocal enforcement of subpoenas. Finally, the bill would require SEC to report annually the nature of the cases affected by H.R. 1689, the extent to which H.R. 1689 adversely affects the protection of investors or the public interest, and the alternatives to maintaining class actions involving most types of securities fraud only in federal courts. CBO assumes that the costs for both reports would be covered by the authorized funding level for 1999.

Pay-as-you-go considerations: None.

Estimated impact on State, local, and tribal governments: H.R. 1689 contains an intergovernmental mandate as defined in UMRA, because it would preempt state securities laws in order to prohibit most securities-related class-action suits from being adjudicated in state courts. The bill would allow state and local government pension plans to continue to sue at the state level, however. CBO estimates that the impact of this mandate on state budgets would not be significant.

Estimated impact on the private sector: The bill would impose no new private-sector mandates as defined in UMRA.

Previous CBO estimate: On May 1, 1998, CBO transmitted an estimate of S. 1260, the Securities Litigation Uniform Standards Act of 1998, as ordered reported by the Senate Committee on Banking, Housing, and Urban Affairs on April 29, 1998. The Senate bill included neither the reauthorization for SEC nor the required reports, so CBO estimated that it would have no significant impact on the federal budget.

Estimate prepared by: Federal Costs: Mark Hadley. Impact on State, Local, and Tribal Governments: Pepper Santalucia.

Estimate approved by: Robert A. Sunshine, Deputy Assistant Director for Budget Analysis.

Federal Mandates Statement

The Committee adopts as its own the estimate of Federal mandates prepared by the Director of the Congressional Budget Office pursuant to section 423 of the Unfunded Mandates Reform Act.

Advisory Committee Statement

1998 Committee Reports, July 21, 1998

No advisory committees within the meaning of section 5(b) of the Federal Advisory Committee Act were created by this legislation.

Constitutional Authority Statement

Pursuant to clause 2(1)(4) of Rule XI of the Rules of the House of Representatives, the Committee finds that the Constitutional authority for this legislation is provided in Article I, section 8, clause 3, which grants Congress the power to regulate commerce with foreign nations, among the several States, and with the Indian tribes.

Applicability to Legislative Branch

The Committee finds that the legislation does not relate to the terms and conditions of employment or access to public services or accommodations within the meaning of section 102(b)(3) of the Congressional Accountability Act.

Section-by-Section Analysis of the Legislation
Section 1. Short title

Section 1 states that the short title of the bill is the Securities Litigation Uniform Standards Act of 1998.

ITLE I SECURITIES LITIGATION UNIFORM STANDARDS
Section 101. Limitation on remedies

Subsection 101(a)(1) amends Section 16 of the Securities Act of 1933 as follows:

Subsection 16(a) is a savings clause, providing that except as provided in subsection (b), the rights and remedies provided by this title are in addition to other rights and remedies existing at law or equity.

Subsection 16(b) provides that no class action based on State law alleging fraud in connection with the purchase or sale of covered securities may be maintained in State or Federal court.

Subsection 16(c) provides that any class action described in subsection (b) that is brought in a State court shall be removable to a Federal district court, and may be dismissed pursuant to the provisions of subsection (b). This provision is designed to prevent a State court from inadvertently, improperly, or otherwise maintaining jurisdiction over an action that is preempted pursuant to subsection (b).

Subsection 16(d) provides for the preservation of certain lawsuits brought under State law. Subparagraph (1) of subsection 16(d) preserves State court jurisdiction over suits affecting conduct of corporate officers with respect to certain corporate actions, including tender offers, exchange offers and the exercise of dissenters or appraisal rights.

Subparagraph (2) of subsection 16(d) preserves State court jurisdiction over suits brought by States, their political subdivisions, and State pension plans, so long as each such plaintiff is named and has authorized participation in the action. The requirement that each plaintiff be named and authorize participation in the action is designed to preserve the ability of municipalities and State pension plans to protect their investors and taxpayers by filing legitimate class actions, while preventing the provision from serving as a loophole through which abusive suits could be brought on behalf of pension funds and municipalities that have no interest in bringing suit, simply in order to extort a large settlement out of the defendant. The requirement that municipalities and these government-related pension plans affirmatively approve the litigation and be named plaintiffs is consistent with the fiduciary duty of these entities to their beneficiaries. The Committee has included these requirements so that these entities will become parties to a lawsuit only after deliberation and their affirmative consent. The Subparagraph includes a definition of the term "State pension plan."

Subparagraph (3) of Subsection 16(d) preserves State court jurisdiction over certain contractual actions, providing that an action seeking to enforce a contractual agreement may be maintained in State or Federal court, but only by a party to the agreement (or a successor to such a party). This provision is designed to make it clear that the legislation does not affect contractual rights under bond indentures.

Subparagraph (4) of subsection 16(d) mandates that a Federal court remand to State court an action that has been removed from State court if the Federal court determines that the action may be maintained in State court. This is intended as a savings clause, so that in the event of improper removal of the limited universe of cases over which State court jurisdiction has been preserved pursuant to this subsection, the Federal court would remand such action back to State court.

Subsection 16(e) is a savings clause, clarifying that State securities commissions retain their jurisdiction to investigate and bring enforcement actions.

Subsection 16(f) provides for definitions under the section, including definitions of "affiliate of the issuer," "class action," and "covered security."

Subsection 16(f) defines "class action" to include actions brought on behalf of more than 50 persons, representative actions brought on behalf of unnamed parties, and so-called "mass actions," which are groups of lawsuits in which damages are sought on behalf of more than 50 persons and the suits are joined or consolidated.

The definition of "class action" provides an exception to preserve State court jurisdiction over derivative actions. The definition also provides that for purposes of counting the number of members of a class, a corporation, investment company, pension plan, partnership, or other entity is treated as one person (provided that the entity was not established for the purpose of participating in the action). The definition also includes a savings clause that emphasizes that a State court retains full discretion to decide whether or not to join or consolidate actions filed in that court. For example, in the event a State court found that joinder of a case would cause an action to be extinguished because the case had been brought pursuant to a longer statute of limitations than exists under Federal law, the State court would retain full discretion to decide not to join that particular case to a group of other cases. The State court might find, however, that joinder of the action was appropriate, regardless of the fact that the case would not fall within the applicable Federal statute of limitations, and the legislation explicitly preserves the authority of the State court to make that determination. Separation or joinder should serve the needs of justice.

Subsection 16(f) defines "covered security" to include a security that qualifies as a "covered security" under subsection 18(b)(1) of the Securities Act of 1933, except that the term does not include certain debt securities issued in private placements. The exclusion of privately placed debt securities is designed to prevent the legislation from inadvertently limiting contractual remedies for breach of express representations or covenants under the note purchase agreements pursuant to which such securities are issued.

Subsection 101(a)(2) amends Section 27(b) of the Securities Act of 1933 to include a provision to prevent plaintiffs from circumventing the stay of discovery under the Reform Act by using State court discovery, which may not be subject to those limitations, in an action filed in State court. This provision expressly permits a Federal court to stay discovery proceedings in any private action in a State court as necessary in aid of its jurisdiction, or to protect or effectuate its judgments. This provision authorizes a court to stay such proceedings in State court, regardless of whether: (1) there exists a parallel action in Federal court; or (2) the State proceedings were brought prior to, subsequent to, or concurrently with, a Federal filing. Because circumvention of the stay of discovery of the Reform Act is a key abuse that this legislation is designed to prevent, the Committee intends that courts use this provision liberally, so that the preservation of State court jurisdiction of limited individual securities fraud claims does not become a loophole through which the trial bar can engage in discovery not subject to the stay of the Reform Act.

Subsection 101(a)(3) provides for conforming amendments to Section 22(a) of the Securities Act of 1933.

Subsection 101(b) amends Section 28 of the Securities Exchange Act of 1934 so as to effect changes to that section that are substantially similar to, and consistent with, the amendments that subsection 101(a) makes to the Securities Act of 1933.

Section 102. Issuance of subpoenas in judicial actions

Section 102 amends the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Investment Advisers Act of 1940, and the Public Utility Holding Company Act of 1935 to permit subpoenas issued by any United States district court pursuant to a proceeding instituted by the Securities and Exchange Commission (SEC or Commission) under any of those Acts to be served to witnesses in any other district. This section thus provides the Commission, as well as defendants in enforcement actions brought by the Commission, with nationwide service of process to compel the attendance of witnesses. This express authorization of nationwide service of process excepts the SEC from Rule 45(b)(2) of the Federal Rules of Civil Procedure (FRCP).

The other provisions of FRCP Rule 45 would remain applicable to actions by the Commission, including subparagraph (c) of the Rule, which directs a person responsible for the issuance of a subpoena to take steps to avoid imposing undue burden or expense on a person subject to the subpoena, and directs courts to enforce this obligation by imposing sanctions upon persons who breach this duty. The Committee expects that the SEC will use this authority with great care and will not impose costs on defendants or third parties on the basis of convenience to the Commission.

Section 103. Promotion of reciprocal subpoena enforcement

1998 Committee Reports, July 21, 1998

Paragraph (a) of section 103 directs the SEC to consult with State securities commissions and encourage the adoption of State laws that provide for reciprocal enforcement of State-issued subpoenas by States other than the issuing State. Paragraph (b) of section 103 directs the Commission to submit a report to the Congress regarding its actions pursuant to paragraph (a), the status of the extent to which States have adopted such reciprocal enforcement measures, and any recommendations regarding further actions to be taken to encourage further adoption of such measures.
Section 104. Analysis of consequences

Section 104 directs the SEC to include in its first three annual reports following the date of enactment of the Act an analysis of the nature and extent of class actions that are preempted or removed pursuant to the Acts provisions, the beneficial or adverse effects of such preemption or removal, and, if adverse effects are found, alternatives that would avoid such adverse effects but would still substantially reduce the risk of abusive securities litigation and further promote the protection of investors and the public interest. The public interest should, consistent with NSMIA, be read to include efficiency, competition and capital formation.

TITLE II REAUTHORIZATION OF THE SECURITIES AND EXCHANGE COMMISSION
Section 201. Authorization of appropriations

Section 201 amends Section 35 of the Securities Exchange Act of 1934 to authorize certain appropriations and expenditures. The section authorizes the appropriation to the Commission of $351,280,000 for Fiscal Year 1999. The section also authorizes the Commission to use funds so appropriated for certain miscellaneous expenses, subject to specified expense limitations. The increase in the amount authorized over H.R. 1262 is intended to provide authorization for modernization of EDGAR consistent with the exchange of letters among Chairman Bliley, Chairman Rogers of the Subcommittee on Commerce, Justice, State, and Judiciary of the House Committee on Appropriations, and SEC Chairman Levitt, dated April 24, 1998, and June 5, 1998, respectively. This additional authorization should not be used for purposes other than EDGAR modernization.

TITLE III CLERICAL AND TECHNICAL AMENDMENTS
Section 301. Clerical and technical amendments

Section 301 amends the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Investment Advisers Act of 1940, and the Trust Indenture Act of 1939 to correct certain clerical and technical errors in those Acts.
Section 302. Exemption of securities issued in connection with certain State hearings

Section 302 restores the applicability of the exemption from Federal registration requirements under the Securities Act of 1933 for securities that have been subject to certain State hearings pursuant to paragraph (10) of Section 3 of that Act.

Changes in Existing Law Made by the Bill, as Reported

In compliance with clause 3 of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

SECURITIES ACT OF 1933

* * * * * * *

TITLE I

short title

Section 1. This title may be cited as the "Securities Act of 1933".

definitions

Sec. 2. (a) Definitions. When used in this title, unless the context otherwise requires

(1) * * *

* * * * * * *

(15) The term "accredited investor" shall mean

(i) a bank as defined in section 3(a)(2) of the Act whether acting in its individual or fiduciary capacity; an insurance company as defined in section 2(13) of the Act paragraph (13) of this subsection an investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; a Small Business Investment Company licensed by the Small Business Administration; or an employee benefit plan, including an individual retirement account, which is subject to the provisions of the Employee Retirement Income Security Act of 1974, if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such Act, which is either a bank, insurance company, or registered investment adviser; or

* * * * * * *

civil liabilities on account of false registration statement

Sec. 11. (a) * * *

* * * * * * *

(f)(1) * * *

(2)(A) The liability of an outside director under subsection (e) shall be determined in accordance with section 38 section 21D(f)of the Securities Exchange Act of 1934.

* * * * * * *

limitation of actions

Sec. 13. No action shall be maintained to enforce any liability created under section 11 or section 12(2) 12(a)(2)unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 12(1) 12(a)(1) unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 11 or section 12(1) 12(a)(1)more than three years after the security was bona fide offered to the public, or under section 12(2) 12(a)(2)more than three years after the sale.

* * * * * * *

additional remedies

Sec. 16. The rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity.

SEC. 16. ADDITIONAL REMEDIES; LIMITATION ON REMEDIES.

(a) Remedies Additional. Except as provided in subsection (b), the rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity.

(b) Class Action Limitations. No class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging

(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

(2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

(c) Removal of Class Actions. Any class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b).

(d) Preservation of Certain Actions.

(1) Actions under state law of state of incorporation.

(A) Actions preserved. Notwithstanding subsection (b) or (c), a class action described in subparagraph (B) of this paragraph that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of

a corporation) or organized (in the case of any other entity) may be maintained in a State or Federal court by a private party.

(B) Permissible actions. A class action is described in this subparagraph if it involves

(i) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or

(ii) any recommendation, position, or other communication with respect to the sale of securities of the issuer that

(I) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

(II) concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters or appraisal rights.

(2) State actions.

(A) In general. Notwithstanding any other provision of this section, nothing in this section may be construed to preclude a State or political subdivision thereof or a State pension plan from bringing an action involving a covered security on its own behalf, or as a member of a class comprised solely of other States, political subdivisions, or State pension plans that are named plaintiffs, and that have authorized participation, in such action.

(B) State pension plan defined. For purposes of this paragraph, the term "State pension plan" means a pension plan established and maintained for its employees by the government of the State or political subdivision thereof, or by any agency or instrumentality thereof.

(3) Actions under contractual agreements between issuers and indenture trustees. Notwithstanding subsection (b) or (c), a class action that seeks to enforce a contractual agreement between an issuer and an indenture trustee may be maintained in a State or Federal court by a party to the agreement or a successor to such party.

(4) Remand of removed actions. In an action that has been removed from a State court pursuant to subsection (c), if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court.

(e) Preservation of State Jurisdiction. The securities commission (or any agency or office performing like functions) of any State shall retain jurisdiction under the laws of such State to investigate and bring enforcement actions.

(f) Definitions. For purposes of this section, the following definitions shall apply:

(1) Affiliate of the issuer. The term "affiliate of the issuer" means a person that directly or indirectly, through 1 or more intermediaries, controls or is controlled by or is under common control with, the issuer.

(2) Class action.

(A) In general. The term "class action" means

(i) any single lawsuit in which

(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II) 1 or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which

(I) damages are sought on behalf of more than 50 persons; and

(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

(B) Exception for derivative actions. Notwithstanding subparagraph (A), the term "class action" does not include an exclusively derivative action brought by 1 or more shareholders on behalf of a corporation.

(C) Counting of certain class members. For purposes of this paragraph, a corporation, investment company, pension plan, partnership, or other entity, shall be treated as 1 person or prospective class member, but only if the entity is not established for the purpose of participating in the action.

(D) Rule of construction. Nothing in this paragraph shall be construed to affect the discretion of a State court in determining whether actions filed in such court should be joined, consolidated, or otherwise allowed to proceed as a single action.

(3) Covered security. The term "covered security" means a security that satisfies the standards for a covered security specified in section 18(b)(1) at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under this title pursuant to rules issued by the Commission under section 4(2) of this title.

* * * * * * *

SEC. 18. EXEMPTION FROM STATE REGULATION OF SECURITIES OFFERINGS.

(a) * * *

(b) Covered Securities. For purposes of this section, the following are covered securities:

(1) Exclusive federal registration of nationally traded securities. A security is a covered security if such security is

(A) listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing,on the National Market System of the Nasdaq Stock Market (or any successor to such entities);

* * * * * * *

(4) Exemption in connection with certain exempt offerings. A security is a covered security with respect to a transaction that is exempt from registration under this title pursuant to

(A) * * *

* * * * * * *

(C) section 3(a), other than the offer or sale of a security that is exempt from such registration pursuant to paragraph (4) or (11) paragraph (4), (10), or (11)of such section, except that a municipal security that is exempt from such registration pursuant to paragraph (2) of such section is not a covered security with respect to the offer or sale of such security in the State in which the issuer of such security is located; or

* * * * * * *

(c) Preservation of Authority.

(1) * * *

(2) Preservation of filing requirements.

(A) * * *

(B) Preservation of fees.

(i) In general. Until otherwise provided by law, rule, regulation, or order, or other administrative action of any State, or any political subdivision thereof, adopted after the date of enactment of the Capital Markets Efficiency Act of 1996 filing or registration fees with respect to securities or 1996 National Securities Markets Improvement Act of 1996 filing or registration fees with respect to securities or securities transactions shall continue to be collected in amounts determined pursuant to State law as in effect on the day before such date.

* * * * * * *

(C) Availability of preemption contingent on payment of fees.

(i) In general. During the period beginning on the date of enactment of the National Securities Market MarketsImprovement Act of 1996 and ending 3 years after that date of enactment, the securities commission (or any

agency or office performing like functions) of any State may require the registration of securities issued by any issuer who refuses to pay the fees required by subparagraph (B).

\* \* \* \* \* \* \*

(d) Definitions. For purposes of this section, the following definitions shall apply:

(1) Offering document. The term "offering document"

(A) has the meaning given the term "prospectus" in section 2(10) 2(a)(10) but without regard to the provisions of subparagraphs (A) and (B) (a) and (b)of that section; and

(2) Prepared by or on behalf of the issuer. Not later than 6 months after the date of enactment of the Securities Amendments Act of 1996 National Securities Markets Improvement Act of 1996 the Commission shall, by rule, define the term "prepared by or on behalf of the issuer" for purposes of this section.

\* \* \* \* \* \* \*

(4) Senior security. For purposes of this paragraph, the Theterm "senior security" means any bond, debenture, note, or similar obligation or instrument constituting a security and evidencing indebtedness, and any stock of a class having priority over any other class as to distribution of assets or payment of dividends.

\* \* \* \* \* \* \*

jurisdiction of offenses and suits

Sec. 22. (a) The district courts of the United States and United States courts of any Territory shall have jurisdiction of offenses and violations under this title and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, except as provided in section 16 with respect to class actions,of all suits in equity and actions at law brought to enforce any liability or duty created by this title. Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. In any action or proceeding instituted by the Commission under this title in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other district. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, 1292, and 1294 of title 28, United States Code. No case Except as provided in section 16(c), no casearising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States. No costs shall be assessed for or against the Commission in any proceeding under this title brought by or against it in the Supreme Court or such other courts.

\* \* \* \* \* \* \*

SEC. 27. PRIVATE SECURITIES LITIGATION.

(a) \* \* \*

(b) Stay of Discovery; Preservation of Evidence.

(1) \* \* \*

\* \* \* \* \* \* \*

(4) Circumvention of stay of discovery. Upon a proper showing, a court may stay discovery proceedings in any private action in a State court as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this subsection.

\* \* \* \* \* \* \*

SEC. 27A. APPLICATION OF SAFE HARBOR FOR FORWARD-LOOKING STATEMENTS.

(a) Applicability. This section shall apply only to a forward-looking statement made by

(1) an issuer that, at the time that the statement is made, is subject to the reporting requirements of section 13(a) or section 15(d) of the Securities Exchange Act of 1934;

\* \* \* \* \* \* \*

SEC. 28. GENERAL EXEMPTIVE AUTHORITY.

The Commission, by rule or regulation, may conditionally or unconditionally exempt any person, security, or transaction, or any class or classes of persons, securities, or transactions, from any provision or provisions of this title or of any rule or regulation issued under this title, to the extent that such exemption is necessary or appropriate in the public interest, and is consistent with the protection of investors.

schedule a

(1) * * *

* * * * * * *

(28) a copy of any agreement or agreements (or, if identic identical agreements are used, the forms thereof) made with any underwriter, including all contracts and agreements referred to in paragraph (17) of this schedule;

* * * * * * *

SECURITIES EXCHANGE ACT OF 1934

TITLE I REGULATION OF SECURITIES EXCHANGES

short title

Section 1. This Act may be cited as the "Securities Exchange Act of 1934".

* * * * * * *

definitions and application of title

Sec. 3. (a) When used in this title, unless the context otherwise requires

(1) * * *

* * * * * * *

(10) The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or bankers acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

* * * * * * *

(12)(A) The term "exempted security" or "exempted securities" includes

(i) * * *

* * * * * * *

(vi) solely for purposes of sections 12, 13, 14, and 16 of this title, any security issued by or any interest or participation in any church plan, company, or account that is excluded from the definition of an investment company under section 3(c)(14) of the Investment Company Act of 1940; and

* * * * * * *

(22)(A) The term "securities information processor" means any person engaged in the business of (i) collecting, processing, or preparing for distribution or publication, or assisting, participating in, or coordinating the distribution or publication of, information with respect to transactions in or quotations for any security (other than an exempted security) or (ii) distributing or publishing (whether by means of a ticker tape, a communications network, a terminal

display device, or otherwise) on a current and continuing basis, information with respect to such transactions or quotations. The term "securities information processor" does not include any bona fide newspaper, news magazine, or business or financial publication of general and regular circulation, any self-regulatory organization, any bank, broker, dealer, building and loan, savings and loan, or homestead association, or cooperative bank, if such bank, broker, dealer, association, or cooperative bank would be deemed to be a securities information processor solely by reason of functions performed by such institutions as part of customary banking, brokerage, dealing, association, or cooperative bank activities, or any common carrier, as defined in section 3(h) 3of the Communications Act of 1934, subject to the jurisdiction of the Federal Communications Commission or a State commission, as defined in section 3(t) such section 3of that Act, unless the Commission determines that such carrier is engaged in the business of collecting, processing, or preparing for distribution or publication, information with respect to transactions in or quotations for any security.

* * * * * * *

(39) A person is subject to a "statutory disqualification" with respect to membership or participation in, or association with a member of, a self-regulatory organization, if such person

(A) * * *

(B) is subject to

(i) an order to the Commission an order of the Commission other appropriate regulatory agency, or foreign financial regulatory authority

(I) * * *

* * * * * * *

margin requirements

Sec. 7. (a) For the purpose of preventing the excessive use of credit for the purchase or carrying of securities, the Federal Reserve Board Board of Governors of the Federal Reserve System shall, prior to the effective date of this section and from time to time thereafter, prescribe rules and regulations with respect to the amount of credit that may be initially extended and subsequently maintained on any security (other than an exempted security). For the initial extension of credit, such rules and regulations shall be based upon the following standard: An amount not greater than whichever is the higher of

(1) * * *

* * * * * * *

(b) Notwithstanding the provisions of subsection (a) of this section, the Federal Reserve Board Board of Governors of the Federal Reserve System may, from time to time, with respect to all or specified securities or transactions, or classes of securities, or classes of transactions, by such rules and regulations (1) prescribe such lower margin requirements for the initial extension or maintenance of credit as it deems necessary or appropriate for the accommodation of commerce and industry, having due regard to the general credit situation of the country, and (2) prescribe such higher margin requirements for the initial extension or maintenance of credit as it may deem necessary or appropriate to prevent the excessive use of credit to finance transactions in securities.

* * * * * * *

(d) Unlawful Credit Extension in Violation of Rules and Regulations; Exception Exceptions to Application of Rules, Etc.

(1) * * *

* * * * * * *

proxies

Sec. 14. (a) * * *

* * * * * * *

(g)(1) * * *

1998 Committee Reports, July 21, 1998

* * * * * * *

(4) Notwithstanding any other provision of law, the Commission may impose fees, charges, or prices for matters not involving any acquisition, merger, consolidation sale, consolidation, sale, or other disposition of assets described in this subsection, as authorized by section 9701 of title 31, United States Code, or otherwise.

* * * * * * *

registration and regulation of brokers and dealers

Sec. 15. (a) * * *

* * * * * * *

(c)(1) * * *

* * * * * * *

(8) Prohibition of referral fees. No broker or dealer, or person associated with a broker or dealer, may solicit or accept, directly or indirectly, remuneration for assisting an attorney in obtaining the representation of any person in any private action arising under this title or under the Securities Act of 1933.

* * * * * * *

(h) Limitations on State Law.

(1) * * *

(2) De minimis transactions by associated persons. No law, rule, regulation, or order, or other administrative action of any State or political subdivision thereof may prohibit an associated person of a broker or dealer from affecting effecting a transaction described in paragraph (3) for a customer in such State if

(A) * * *

* * * * * * *

(3) Described transactions.

(A) In general. A transaction is described in this paragraph if

(i) such transaction is effected

(I) on behalf of a customer that, for 30 days prior to the day of the transaction, maintained an account with the broker or dealer; and

(II) by an associated person of the broker or dealer

(aa) to which the customer was assigned for 14 days prior to the day of the transaction; and

(bb) who is registered with a State in which the customer was a resident or was present for at least 30 consecutive days during the 1-year period prior to the day of the transaction; or

(ii) the transaction is effected

(I) on behalf of a customer that, for 30 days prior to the day of the transaction, maintains maintained an account with the broker or dealer; and

* * * * * * *

(B) Rules of construction. For purposes of subparagraph (A)(i)(II)

(i) * * *

(ii) if the customer is present in another State for 30 or more consecutive days or has permanently changed his or her residence to another State, a transaction is not described in this paragraph, unless the association associated person of the broker or dealer files an application for registration with such State not later than 10 business days after the later of the date of the transaction, or the date of the discovery of the presence of the customer in the other State for 30 or more consecutive days or the change in the customers residence.

1998 Committee Reports, July 21, 1998

* * * * * *

municipal securities

Sec. 15B. (a) * * *

* * * * * *

(c)(1) * * *

* * * * * *

(4) The Commission, by order, shall censure or place limitations on the activities or functions of any person associated, seeking to become associated, or, at the time of the alleged misconduct, associated or seeking to become associated with a municipal securities dealer, or suspend for a period not exceeding twelve months or bar any such person from being associated with a municipal securities dealer, if the Commission finds, on the record after notice and opportunity for hearing, that such censure, placing of limitations, suspension, or bar is in the public interest and that such person has committed any act or omission enumerated in subparagraph (A), (D), (E), or (G) of paragraph (4) of section 15(b) of this title, has been convicted by any offense convicted of any offense specified in subparagraph (B) of such paragraph (4) within 10 years of the commencement of the proceedings under this paragraph, or is enjoined from any action, conduct, or practice specified in subparagraph (C) of such paragraph (4). It shall be unlawful for any person as to whom an order entered pursuant to this paragraph or paragraph (5) of this subsection suspending or barring him from being associated with a municipal securities dealer is in effect willfully to become, or to be, associated with a municipal securities dealer without the consent of the Commission, and it shall be unlawful for any municipal securities dealer to permit such a person to become, or remain, a person associated with him without the consent of the Commission, if such municipal securities dealer knew, or, in the exercise of reasonable care should have known, of such order.

* * * * * *

government securities brokers and dealers

Sec. 15C. (a) * * *

* * * * * *

(f) Large Position Reporting.

(1) * * *

* * * * * *

(5) Exemptions. Consistent with the public interest and the protection of investors, the Secretary by rule or order may exempt in whole or in part, conditionally or unconditionally, any person or class or persons any person or class of persons or any transaction or class of transactions, from the requirements of this subsection.

* * * * * *

accounts and records, examinations of exchanges, members, and others

Sec. 17. (a) * * *

* * * * * *

(g) Any broker, dealer, or other person extending credit who is subject to the rules and regulations prescribed by the Board of Governors of the Federal Reserve Board Board of Governors of the Federal Reserve System pursuant to this title shall make such reports to the Board as it may require as necessary or appropriate to enable it to perform the functions conferred upon it by this title. If any such broker, dealer, or other person shall fail to make any such report or fail to furnish full information therein, or, if in the judgment of the Board it is otherwise necessary, such broker, dealer, or other person shall permit such inspections to be made by the Board with respect to the business operations of such broker, dealer, or other person as the Board may deem necessary to enable it to obtain the required information.

* * * * * *

registration, responsibilities, and oversight of self-regulatory organizations

1998 Committee Reports, July 21, 1998

Sec. 19. (a) * * *

* * * * * * *

(c) The Commission, by rule, may abrogate, add to, and delete from (hereinafter in this subsection collectively referred to as "amend") the rules of a self-regulatory organization (other than a registered clearing agency) as the Commission deems necessary or appropriate to insure the fair administration of the self-regulatory organization, to conform its rules to requirements of this title and the rules and regulations thereunder applicable to such organization, or otherwise in furtherance of the purposes of this title, in the following manner:

(1) * * *

* * * * * * *

(5) With respect to rules described in subsection (b)(5), the Commission shall consult with and consider the views of the Secretary of the Treasury before abrogating, adding to, and deleting from such rules, except where the Commission determines that an emergency exists requiring expeditious or summary action and publishes its reasons therefor.

* * * * * * *

liability of controlling persons and persons who aid and abet violations

Sec. 20. (a) * * *

* * * * * * *

(f) (e)Prosecution of Persons Who Aid and Abet Violations. For purposes of any action brought by the Commission under paragraph (1) or (3) of section 21(d), any person that knowingly provides substantial assistance to another person in violation of a provision of this title, or of any rule or regulation issued under this title, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

* * * * * * *

SEC. 21D. PRIVATE SECURITIES LITIGATION.

(a) * * *

(b) Requirements for Securities Fraud Actions.

(1) * * *

* * * * * * *

(3) Motion to dismiss; stay of discovery.

(A) * * *

* * * * * * *

(D) Circumvention of stay of discovery. Upon a proper showing, a court may stay discovery proceedings in any private action in a State court as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this paragraph.

* * * * * * *

(g) (f)Proportionate Liability.

(1) Applicability. Nothing in this subsection shall be construed to create, affect, or in any manner modify, the standard for liability associated with any action arising under the securities laws.

(2) Liability for damages.

(A) Joint and several liability. Any covered person against whom a final judgment is entered in a private action shall be liable for damages jointly and severally only if the trier of fact specifically determines that such covered person knowingly committed a violation of the securities laws.

(B) Proportionate liability.

(i) In general. Except as provided in paragraph (1) subparagraph (A) a covered person against whom a final judgment is entered in a private action shall be liable solely for the portion of the judgment that corresponds to the percentage of responsibility of that covered person, as determined under paragraph (3).

* * * * * * *

unlawful representations

Sec. 26. No action or failure to act by the Commission or the Federal Reserve Board Board of Governors of the Federal Reserve System in the administration of this title shall be construed to mean that the particular authority has in any way passed upon the merits of, or given approval to, any security or any transaction or transactions therein, nor shall such action or failure to act with regard to any statement or report filed with or examined by such authority pursuant to this title or rules and regulations thereunder, be deemed a finding by such authority that such statement or report is true and accurate on its face or that it is not false or misleading. It shall be unlawful to make, or cause to be made, to any prospective purchaser or seller of a security any representation that any such action or failure to act by any such authority is to be so construed or has such effect.

jurisdiction of offenses and suits

Sec. 27. The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this title or rules and regulations thereunder, or to enjoin any violation of such title or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. In any action or proceeding instituted by the Commission under this title in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other district. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, 1292, and 1294 of title 28, United States Code. No costs shall be assessed for or against the Commission in any proceeding under this title brought by or against it in the Supreme Court or such other courts.

effect on existing law

Sec. 28. (a) The rights and remedies Except as provided in subsection (f), the rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity; but no person permitted to maintain a suit for damages under the provisions of this title shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of. Except as otherwise specifically provided in this title, nothing in this title shall affect the jurisdiction of the securities commission (or any agency or officer performing like functions) of any State over any security or any person insofar as it does not conflict with the provisions of this title or the rules and regulations thereunder. No State law which prohibits or regulates the making or promoting of wagering or gaming contracts, or the operation of ucket shops or other similar or related activities, shall invalidate any put, call, straddle, option, privilege, or other security, or apply to any activity which is incidental or related to the offer, purchase, sale, exercise, settlement, or closeout of any such instrument, if such instrument is traded pursuant to rules and regulations of a self-regulatory organization that are filed with the Commission pursuant to section 19(b) of this Act.

* * * * * * *

(f) Limitations on Remedies.

(1) Class action limitations. No class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

(2) Removal of class actions. Any class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

(3) Preservation of certain actions.

(A) Actions under state law of state of incorporation.

(i) Actions preserved. Notwithstanding paragraph (1) or (2), a class action described in clause (ii) of this subparagraph that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity) may be maintained in a State or Federal court by a private party.

(ii) Permissible actions. A class action is described in this clause if it involves

(I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or

(II) any recommendation, position, or other communication with respect to the sale of securities of an issuer that

(aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

(bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters or appraisal rights.

(B) State actions.

(i) In general. Notwithstanding any other provision of this subsection, nothing in this subsection may be construed to preclude a State or political subdivision thereof or a State pension plan from bringing an action involving a covered security on its own behalf, or as a member of a class comprised solely of other States, political subdivisions, or State pension plans that are named plaintiffs, and that have authorized participation, in such action.

(ii) State pension plan defined. For purposes of this subparagraph, the term "State pension plan" means a pension plan established and maintained for its employees by the government of a State or political subdivision thereof, or by any agency or instrumentality thereof.

(C) Actions under contractual agreements between issuers and indenture trustees. Notwithstanding paragraph (1) or (2), a class action that seeks to enforce a contractual agreement between an issuer and an indenture trustee may be maintained in a State or Federal court by a party to the agreement or a successor to such party.

(D) Remand of removed actions. In an action that has been removed from a State court pursuant to paragraph (2), if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court.

(4) Preservation of state jurisdiction. The securities commission (or any agency or office performing like functions) of any State shall retain jurisdiction under the laws of such State to investigate and bring enforcement actions.

(5) Definitions. For purposes of this subsection, the following definitions shall apply:

(A) Affiliate of the issuer. The term "affiliate of the issuer" means a person that directly or indirectly, through 1 or more intermediaries, controls or is controlled by or is under common control with, the issuer.

(B) Class action. The term "class action" means

(i) any single lawsuit in which

(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II) 1 or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which

(I) damages are sought on behalf of more than 50 persons; and

(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

(C) Exception for derivative actions. Notwithstanding subparagraph (B), the term "class action" does not include an exclusively derivative action brought by 1 or more shareholders on behalf of a corporation.

(D) Counting of certain class members. For purposes of this paragraph, a corporation, investment company, pension plan, partnership, or other entity, shall be treated as 1 person or prospective class member, but only if the entity is not established for the purpose of participating in the action.

(E) Covered security. The term "covered security" means a security that satisfies the standards for a covered security specified in section 18(b)(1) of the Securities Act of 1933, at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under the Securities Act of 1933 pursuant to rules issued by the Commission under section 4(2) of such Act.

(F) Rule of construction. Nothing in this paragraph shall be construed to affect the discretion of a State court in determining whether actions filed in such court should be joined, consolidated, or otherwise allowed to proceed as a single action.

* * * * * * *

SEC. 31. TRANSACTION FEES.

(a) Recovery of Cost of Services. The Commission shall, in accordance with this subsection section, collect transaction fees that are designed to recover the costs to the Government of the supervision and regulation of securities markets and securities professionals, and costs related to such supervision and regulation, including enforcement activities, policy and rulemaking activities, administration, legal services, and international regulatory activities.

* * * * * * *

SEC. 35. AUTHORIZATION OF APPROPRIATIONS.

There are authorized to be appropriated to carry out the functions, powers, and duties of the Commission $300,000,000 for fiscal year 1997, in addition to any other funds authorized to be appropriated to the Commission.

SEC. 35. AUTHORIZATION OF APPROPRIATIONS.

(a) In General. In addition to any other funds authorized to be appropriated to the Commission, there are authorized to be appropriated to carry out the functions, powers, and duties of the Commission $351,280,000 for fiscal year 1999.

(b) Miscellaneous Expenses. Funds appropriated pursuant to this section are authorized to be expended

(1) not to exceed $3,000 per fiscal year, for official reception and representation expenses;

(2) not to exceed $10,000 per fiscal year, for funding a permanent secretariat for the International Organization of Securities Commissions; and

(3) not to exceed $100,000 per fiscal year, for expenses for consultations and meetings hosted by the Commission with foreign governmental and other regulatory officials, members of their delegations, appropriate representatives, and staff to exchange views concerning developments relating to securities matters, for development and implementation of cooperation agreements concerning securities matters and provision of technical assistance for the development of foreign securities markets, such expenses to include necessary logistic and administrative expenses and the expenses of Commission staff and foreign invitees in attendance at such consultations and meetings, including

(A) such incidental expenses as meals taken in the course of such attendance;

1998 Committee Reports, July 21, 1998

(B) any travel or transportation to or from such meetings; and

(C) any other related lodging or subsistence.

* * * * * * *

# INVESTMENT COMPANY ACT OF 1940

## TITLE I INVESTMENT COMPANIES

* * * * * * *

general definitions

Sec. 2. (a) When used in this title, unless the context otherwise requires

(1) * * *

* * * * * * *

(8) "Company" means a corporation, a partnership, an association, a joint-stock company, a trust, a fund, or any organized group of persons whether incorporated or not; or any receiver, trustee in a case under title 11 of the United States Code or similar official or any liquidating agent for any of the foregoing, in his capacity as such.

* * * * * * *

definition of investment company

Sec. 3. (a) * * *

(b) Notwithstanding paragraph (3) of subsection (a) paragraph (1)(C) of subsection (a) none of the following persons is an investment company within the meaning of this title:

(1) * * *

* * * * * * *

functions and activities of investment companies

Sec. 12. (a) * * *

* * * * * * *

(d)(1)(A) * * *

* * * * * * *

(G)(i) This paragraph does not apply to securities of a registered open-end investment company or a registered unit investment trust (hereafter in this subparagraph referred to as the "acquired company") purchased or otherwise acquired by a registered open-end investment company or a registered unit investment trust (hereafter in this subparagraph referred to as the "acquiring company") if

(I) * * *

* * * * * * *

(III) with respect to

(aa) * * *

(bb) securities of the acquiring company, any sales loads and other distribution-related fees charged, when aggregated with any sales load and distribution-related fees paid by the acquiring company with respect to securities of the acquired fund company are not excessive under rules adopted pursuant to section 22(b) or section 22(c) by a securities association registered under section 15A of the Securities Exchange Act of 1934, or the Commission;

* * * * * * *

capital structure

Sec. 18. (a) * * *

* * * * * * *

(e) The provisions of this section 18 shall not apply to any senior securities issued or sold by any registered closed-end company

(1) * * *

(2) pursuant to any plan of reorganization (other than for refunding as referred to in subsection (e)(2) paragraph (1) of this subsection, provided

(A) * * *

* * * * * * *

periodic and other reports; reports of affiliated persons

Sec. 30. (a) * * *

(b) Every registered investment company shall file with the Commission

(1) such information, documents, and reports (other than financial statements), as the Commission may require to keep reasonably current the information and documents contained in the registration statement of such company filed under this title; and

* * * * * * *

(e) Every registered investment company shall transmit to its stockholders, at least semi-annually semiannually reports containing such of the following information and financial statements or their equivalent, as of a reasonably current date, as the Commission may prescribe by rules and regulations for the protection of investors, which reports shall not be misleading in any material respect in the light of the reports required to be filed pursuant to subsections (a) and (b):

(1) * * *

* * * * * * *

(g) (i)Disclosure to Church Plan Participants. A person that maintains a church plan that is excluded from the definition of an investment company solely by reason of section 3(c)(14) shall provide disclosure to plan participants, in writing, and not less frequently than annually, and for new participants joining such a plan after May 31, 1996, as soon as is practicable after joining such plan, that

(1) the plan, or any company or account maintained to manage or hold plan assets and interests in such plan, company, or account, are not subject to registration, regulation, or reporting under this title, the Securities Act of 1933, the Securities Exchange Act of 1934, or State securities laws; and

(2) plan participants and beneficiaries therefore will not be afforded the protections of those provisions.

(h) (j)Notice to Commission. The Commission may issue rules and regulations to require any person that maintains a church plan that is excluded from the definition of an investment company solely by reason of section 3(c)(14) to file a notice with the Commission containing such information and in such form as the Commission may prescribe as necessary or appropriate in the public interest or consistent with the protection of investors.

accounts and records

Sec. 31. (a) * * *

* * * * * * *

(f) Exemption Authority. The Commission, upon application made by any registered investment company, may by order exempt a specific transaction or transactions from the provisions of any rule or regulation made pursuant to subsection (c) (e) if the Commission finds that such rule or regulation should not reasonably be applied to such transaction.

* * * * * * *

1998 Committee Reports, July 21, 1998

jurisdiction of offenses and suits

Sec. 44. The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have jurisdiction of violations of this title or the rules, regulations, or orders thereunder, and, concurrently with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this title or the rules, regulations, or orders thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. A criminal proceeding based upon a violation of section 34, or upon a failure to file a report or other document required to be filed under this title, may be brought in the district wherein the defendant is an inhabitant or maintains his principal office or place of business. Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this title or rules, regulations, or orders thereunder, may be brought in any such district or in the district wherein the defendant is an inhabitant or transacts business, and process in such cases may be served in any district of which the defendant is an inhabitant or transacts business or wherever the defendant may be found. In any action or proceeding instituted by the Commission under this title in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other district. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, 1292, and 1294 of title 28, United States Code. No costs shall be assessed for or against the Commission in any proceeding under this title brought by or against the Commission in any court. The Commission may intervene as a party in any action or suit to enforce any liability or duty created by, or to enjoin any noncompliance with, section 36(b) of this title at any stage of such action or suit prior to final judgment therein.

\* \* \* \* \* \* \*

INVESTMENT ADVISORS ACT OF 1940

\* \* \* \* \* \* \*

TITLE II INVESTMENT ADVISERS

\* \* \* \* \* \* \*

registration of investment advisers

Sec. 203. (a) \* \* \*

\* \* \* \* \* \* \*

(e) The Commission, by order, shall censure, place limitations on the activities, functions, or operations of, suspend for a period not exceeding twelve months, or revoke the registration of any investment adviser if it finds, on the record after notice and opportunity for hearing, that such censure, placing of limitations, suspension, or revocation is in the public interest and that such investment adviser, or any person associated with such investment adviser, whether prior to or subsequent to becoming so associated

(1) \* \* \*

\* \* \* \* \* \* \*

(8) has been found by a foreign financial regulatory authority to have

(A) \* \* \*

(B) violated any foreign statute or regulation regarding transactions in securities or contracts of sale of a commodity for future delivery traded on or subject to the rules of a contract market or any board of trade; or

\* \* \* \* \* \* \*

jurisdiction of offenses and suits

Sec. 214. The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have jurisdiction of violations of this title or the rules, regulations, or orders thereunder, and, concurrently with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of this title or the rules, regulations, or orders thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the

violation occurred. Any suit or action to enforce any liability or duty created by, or to enjoin any violation of this title or rules, regulations, or orders thereunder, may be brought in any such district or in the district wherein the defendant is an inhabitant or transacts business, and process in such cases may be served in any district of which the defendant is an inhabitant or transacts business or wherever the defendant may be found. In any action or proceeding instituted by the Commission under this title in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other district. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, 1292, and 1294 of title 28, United States Code. No costs shall be assessed for or against the Commission in any proceeding under this title brought by or against the Commission in any court.

\* \* \* \* \* \* \*

SEC. 222. STATE REGULATION OF INVESTMENT ADVISERS.

(a) \* \* \*

(b) Dual Compliance Purposes. No State may enforce any law or regulation that would require an investment adviser to maintain any books or records in addition to those required under the laws of the State in which it maintains its principal place of business, if the investment adviser

(1) is registered or licensed as such in the State in which it maintains its principal place of business; and

(2) is in compliance with the applicable books and records requirements of the State in which it maintains its principle principal place of business.

\* \* \* \* \* \* \*

SECTION 25 OF THE PUBLIC UTILITY HOLDING COMPANY ACT OF 1935

jurisdiction of offenses and suits

Sec. 25. The District Courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have jurisdiction of violations of this title or the rules, regulations, or orders thereunder, and, concurrently with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this title or the rules, regulations, or orders thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this title or rules, regulations, or orders thereunder, may be brought in any such district or in the district wherein the defendant is an inhabitant or transacts business, and process in such cases may be served in any district of which the defendant is an inhabitant or transacts business or wherever the defendant may be found. In any action or proceeding instituted by the Commission under this title in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other district. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, 1292, and 1294 of title 28, United States Code. No costs shall be assessed for or against the Commission in any proceeding under this title brought by or against the Commission in any court.

TRUST INDENTURE ACT OF 1939

TITLE III

short title

Sec. 01. This title, divided into sections as follows, may be cited as the "Trust Indenture Act of 1939":

\* \* \* \* \* \* \*

definitions

Sec. 03. When used in this title, unless the context otherwise requires

(1) Any term defined in section 2 of the Securities Act of 1933, and not otherwise defined in this section, shall have the meaning assigned to such term in such section 2.

1998 Committee Reports, July 21, 1998

(2) The terms "sale", "sell", "offer to sell", "offer for sale", and "offer" shall include all transactions included in such terms as provided in paragraph (3) of section 2(a)of the Securities Act of 1933, except that an offer or sale of a certificate of interest or participation shall be deemed an offer or sale of the security or securities in which such certificate evidences an interest or participation if and only if such certificate gives the holder thereof the right to convert the same into such security or securities.

(3) The term "prospectus" shall have the meaning assigned to such term in paragraph (10) of section 2(a)of the Securities Act of 1933, except that in the case of securities which are not registered under the Securities Act of 1933, such term shall not include any communication (A) if it is proved that prior to or at the same time with such communication a written statement if any required by section 306 was sent or given to the persons to whom such communication was made, or (B) if such communication states from whom such statement may be obtained (if such statement is required by rules or regulations under paragraphs (1) or (2) of subsection (b) of section 306) and, in addition, does no more than identify the security, state the price thereof, state by whom orders will be executed and contain such other information as the Commission, by rules or regulations deemed necessary or appropriate in the public interest or for the protection of investors, and subject to such terms and conditions as may be prescribed therein, may permit.

* * * * * * *

exempted securities and transactions

Sec. 04. (a) The provisions of this title shall not apply to any of the following securities:

(1) * * *

* * * * * * *

(4)(A) any security exempted from the provisions of the Securities Act of 1933 by paragraph (2), (3), (4), (5), (6), (7), (8), (11), or (14) of subsection (13) of section3(a) thereof;

* * * * * * *

reports by indenture trustee

* * * * * * *

Sec. 13. (a) The indenture trustee shall transmit to the indenture security holders as hereinafter provided, at stated intervals of not more than 12 months, a brief report with respect to any of the following events which may have occurred within the previous 12 months (but if no such event has occurred within such period no report need be transmitted):

(1) * * *

* * * * * * *

(4) any change to the amount, interest rate, and maturity date of all other indebtedness owing to it in its individual capacity, on the date of such report, by the obligor upon the indenture securities, with a brief description of any property held as collateral security therefor, except an indebtedness based upon a creditor relationship arising in any manner described in paragraphs (2), (3), (4), or (6) of subsection 311;

(5) any change to the property and funds physically in its possession as indenture trustee on the date of such report;

(6) any change to any release, or release and substitution, of property subject to the lien of the indenture (and the consideration therefor, if any) which it has not previously reported;

* * * * * * *

rules, regulations, and orders

Sec. 19. (a) * * *

(b) Subject to the provisions of the Federal Register Act chapter 15 of title 44, United States Code, and regulations prescribed under the authority thereof, the rules and regulations of the Commission under this title shall be effective upon publication in the manner which the Commission shall prescribe, or upon such later date as may be provided in such rules and regulations.

1998 Committee Reports, July 21, 1998

\* \* \* \* \* \* \*

DISSENTING VIEWS

We abhor strike suits and frivolous litigation of any stripe. We would enthusiastically support responsible and balanced legislation narrowly targeted at ameliorating those abuses. H.R. 1689 does not meet that standard. We dissent from this bill.

As introduced, H.R. 1689 was an industry wish list devoid of proper safeguards to protect the essential rights of injured investors to pursue meritorious claims. The sponsors and proponents of H.R. 1689 adopted several amendments during Subcommittee and Full Committee markup to temper some of the bills harshest elements. We commend our colleagues. The bill, nonetheless, is still flawed.

H.R. 1689 creates a national standard governing securities fraud class actions involving "covered securities" which are nationally traded securities and some that are not. The bill requires these class actions to be brought in federal court pursuant to federal law, where they would be subject to the more stringent terms of the Private Securities Litigation Reform Act of 1995. These terms include the double whammy of heightened pleading standards along with a stay of discovery pending a motion to dismiss, blocking the ability of defrauded investors to gain the special facts needed to meet the heightened pleading standards.

First, the bill is premature. The Securities and Exchange Commission (SEC) concluded in its April 1997 report to the President and Congress that: "it is too early to assess with confidence many important effects of the Reform Act and therefore, on this basis, it is premature to propose legislative changes. The one-year time frame has not allowed for sufficient practical experience with the Reform Acts key provisions, or for many court decisions (particularly appellate court decisions) interpreting those provisions." The Chairman of the SEC testified before our finance subcommittee on October 21, 1997, that his agency had "not had enough practical experience with the Act to produce the data necessary for us to measure its success." That is still the case.

Second, there is no national problem in need of a national solution. Data compiled by unbiased sources shows that the number of state securities class actions has declined during the last year to pre-Reform Act levels. In 1997, there were a total of 44 state class action securities cases, out of a total of 15 million civil filings. By comparison, 67 state class actions were filed in 1994, the year before the Reform Act became law, and 66 cases were filed in 1996, the year after the Reform Act was enacted. We note in passing that we have been shown no convincing proof that any of these lawsuits was without merit and was allowed to proceed notwithstanding its lack of merit. Moreover, as the attached map shows, the overwhelming majority of those cases were filed in California, with most states having zero filings. That being the case, shouldnt this "problem" be solved in the California legislature? We believe that state legislatures should be given time to consider laws of their own to address the issues raised in this debate.

We find it curious indeed that the Republican-led Congress that campaigns on returning power to the states and protecting individual choice, would champion a federal mandate abolishing important state prerogatives along with protections and rights. Forty-nine states, as well as the District of Columbia, allow for some form of aiding-and-abetting liability. There is no aiding-and-abetting liability in private actions for most federal securities fraud claims. In addition, private actions under the federal securities laws are subject to a short statute of limitations. Specifically, private actions under Section 10(b) of the Exchange Act must be brought within one year after discovery of the alleged violation, and no more than three years after the violation occurred. In contrast, 33 states allow for longer limitation periods. These investor protection laws available at the state level, as the attached list shows, will no longer be available to class action plaintiffs upon passage of H.R. 1689. The public should clearly understand the investor protections being wiped out by the elected representatives who vote yes on this bill.

Moreover, under H.R. 1689s unusual "grouping" provision, any time more than 50 individuals file state court complaints "in the same court and involving common questions of law or fact," they will be deemed to be part of a "class action" subject to this bill, if "the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." Individuals who bring suits in state court in their own name may find, if others have brought similar suits, that their claims are preempted. For instance, if an investment adviser churns the accounts of or recommends unsuitable securities to clients in a single state and more than 50 of them seek to recover in the same court, each filing their own individual action, they may be forced to constitute a class action and have to pursue their claims if possible in federal court. These investors may be left without a remedy. This is broader preemption than we believe is necessary or appropriate. There has been no showing that these kinds of suits, either individually or in the aggregate, present the kinds of potential abuses that have been attributed to traditional class actions and strike suites.

1998 Committee Reports, July 21, 1998

The debate on this legislation has been polar. It has tarred all private securities fraud litigation as meritless strike suites, and all defendant companies, accountants, and broker-dealers as innocent victims of large-sum-settlement hijackings. Through this lens, unintended harm to legitimate lawsuits is viewed as a reasonable tradeoff. We disagree on both counts.

The record shows that securities fraud is up. Many of those cases involve accounting frauds. The SEC has always taken the view that private lawsuits are a crucial adjunct to the SECs own enforcement program. They are the principle means by which investors have recovered losses caused by fraud. Proponents of H.R. 1689 argue that investors recover only "10 cents on the dollar" in these cases. We agree that we need to put investors first. But nothing in this bill addresses the recovery issue in any way.

For these reasons, we oppose this bill and urge the House to do the same.

John D. Dingell.

Edward J. Markey.

Bart Stupak.

Diana DeGette.

Offset Folios 56 to 59 insert here 004

## ADDITIONAL DISSENTING VIEWS OF CONGRESSMAN RON KLINK

H.R. 1689 is a solution in search of a problem.

In 1995, the Commerce Committee developed and Congress approved, over a presidential veto, the Private Securities Litigation Reform Act, which put strict limits on federal investor class action lawsuits. I opposed that legislation because I was concerned about preventing defrauded investors from being made whole again. But my side lost, and we all moved on.

One of the arguments when we debated the 1995 Act was that truly victimized investors could still seek redress in state court. So there was some comfort in that; retirees who lost their life savings to securities fraud could still pursue legal action.

Now, however, I fear that the Committee is moving to cut off the state avenue for class action securities suits. That could mean that investors would have no ability to seek relief from securities wrongdoers, and that is unacceptable to me.

There appears to be no explosion of state securities class actions, so I see no real need for this bill. Last year there were only 44 throughout the entire country, the lowest number in five years.

Furthermore, at a time when there are more investors than at any time in history, many of them unsophisticated investors, we should not be making it easier to get away with securities fraud. We owe that to our investor constituents and we owe that to the capital markets in this country, which remain the strongest in the world.

Additionally, though the bill contains a provision similar to the Sarbanes amendment in the Senate bill, which provides for an exemption from the bill for state and local entities, this provision goes beyond Sarbanes to require those entities to be named plaintiffs in and authorize participation in state securities class actions. This assumes a level of sophistication that may be lacking in these investors.

I will provide an example. Last year, the SEC alleged that Devon Capital Management had defrauded 100 municipal clients in Pennsylvania and elsewhere. Those clients included 75 school districts, mostly in Western and Central Pennsylvania. Devon and the SEC reached a settlement, and those school districts are expected to recover a little over half of the $71 million that Devon lost.

Now, how can we say that these same school districts and local governments that were unsophisticated enough to have invested with Devon in the first place and lost all this money, are, at the same time, sophisticated enough to recognize the steps they need to take to preserve their rights to bring a state securities class action under this bill?

I would prefer that, at the very least, the Sarbanes amendment exempting state and local governments and pension plans be maintained as it passed the Senate.

1998 Committee Reports, July 21, 1998

Finally, I am disturbed by the trend I am seeing in the Committee and Congress as a whole in our attitude toward investors, especially the mom and pop investors we all represent. As I said, I opposed the 1995 Securities Litigation Reform Act. That was followed closely by the Fields Securities Reform bill, which threatened to severely limit the ability of state securities regulators, the local cops on the beat in the securities world, to protect investors. In Committee and in conference, we were able to temper this legislation so that investors would not be left vulnerable.

We are at a point in time when Members of Congress and others are talking about privatizing Social Security. That will lead to even more unsophisticated investors and hundreds of billions of dollars going into the marketplace. And yet we continue to talk about reducing investor protections.

Another question I have is, are we now saying to the states that we in Washington, DC, know better than the states what cases should go through state courts and which should not? Are we next going to tell the states that they cant hear real estate cases? Are we going to tell them they cant hear tobacco cases? What comes next?

I never thought I would see the day when my Republican colleagues would want to dictate from on high in Washington, DC, what state law should be.  Ron Klink.

**SUBJECT:** LITIGATION (95%); CLASS ACTIONS (92%); LEGISLATION (91%); EMPLOYEE BENEFITS (90%); PENSION & RETIREMENT PLANS (90%); SUITS & CLAIMS (90%);

**LOAD-DATE:** August 05, 1998